State v. Rutherford.

THE STATE v. RUTHERFORD, Appellant.

Division Two, October 31, 1899.

1. **Larceny:** FELONIOUS INTENT. An instruction which does not require the jury to find that the goods were taken and carried away with fraudulent and felonious intent, omits an essential element of larceny. And even though the jury are required to find that defendant appropriated the goods to his own use, yet the instruction remains one for trespass and not larceny.

2. **Reputation:** NUMBER OF WITNESSES. Where the court has heard six witnesses who testify that defendant's reputation for honesty and integrity in the county in which he had lived nearly all his life and in which he is being tried, is good, it is not error to reject other witnesses who have only casually known him in places where he has lived only a few months, if it is plain that their rejection resulted in no injury to defendant.

3. **Instruction:** SPECIAL PROMINENCE TO CERTAIN FACTS. An instruction should not comment on the evidence. And the singling out of certain evidence properly before the jury, and giving it marked prominence, is such comment.

State v. Rutherford.

4. ——: CIRCUMSTANCES. It is proper to instruct the jury that defendant's guilt of larceny may be established by the facts and circumstances of the case, but it is not proper to instruct that these circumstances consist in his being hard pressed for money and in leaving his bills outstanding and unpaid, and in his having a considerable sum of money the day following and in paying accounts previously contracted by him, etc. Especially is such an instruction error if proper instructions on the subject of circumstantial evidence, asked by defendant, are refused.

5. ——: DEFENDANT ENTITLED TO CONVERSE. The defendant is entitled to the converse of the State's instruction. That is, if the State's instruction tells the jury that if they find certain facts to be true they should convict defendant, then it is simply fair to him to have his instruction given telling them unless they find these facts to be true they should acquit him.

6. Evidence: LARCENY OF MONEY: ACCOUNTING FOR POSSESSION OF SAME. Where defendant was charged with stealing a certain sum of money and a part of the sum was found in his possession the next day, it was not error under the circumstances of this case, to exclude his offer to show that a part of the money was obtained by the sale of some horses twelve or eighteen months previously.

*Appeal from Moniteau Circuit Court.*—HON. D. W. SHACKLEFORD, Judge.

REVERSED AND REMANDED.

MOORE & WILLIAMS and W. M. WILLIAMS for appellant.

(1)    Defendant offered to prove that at different times in 1896 and 1897, prior to his arrest, he collected various amounts of money. The court refused these offers of evidence, on the ground that the time was too remote. In this, there was error. Defendant's testimony connected those transactions with the cash in his possession on the fourth of December, 1897. If his evidence was true (and of that the jury were to judge) the money received from these parties was the money he had on hand when he was taken in charge by the officers. It was important for him to show the sources from which that money was derived, and it was wholly immaterial how long prior to that time he had received it. (2)    The ruling of the court, that the defendant could only introduce three

witnesses, to prove his good character, was erroneous.    During the cross-examination of the witnesses, who knew defendant in his boyhood home, the fact was developed by the State, for the evident purpose of weakening their testimony, that he had been absent from his former residence during the year preceding the alleged crime.    Part of that time he had lived in St. Louis, and during another part of that time in Cooper county. The court permitted one witness from St. Louis to testify to the reputation defendant had established there for honesty and integrity among his associates in said city, but refused to permit any other to testify upon that point.    While it may be true that the trial court can limit the number of witnesses to be called to testify to a particular point in a case, yet this discretion can not be exercised to the injury of defendant.    It is submitted that, upon the question of the character or reputation of a defendant in a criminal case, it is an unreasonable rule to limit the number of witnesses to three, and certainly this must be true where the defendant, as here, had resided at several places.    (3)    (a)    The first instruction given on behalf of the State, is manifestly erroneous.    It fails to include the necessary element constituting the crime with which the defendant was charged.    Under its guidance it was not necessary that the taking should have been wrongful or with a felonious intent.    State v. Moore, 101 Mo. 326; Witt v. State. 9 Mo. 663; State v. Campbell, 108 Mo. 614.    (b)    This instruction omits to require that the jury should find that the package containing the $500, was the property of the People's Bank.    (4)    The second instruction given on behalf of the State singles out and gives undue prominence to particular facts and circumstances claimed to have been shown by the evidence.    State v. Sivils, 105 Mo. 530; State v. Fairlamb, 121 Mo. 148.

EDWARD C. CROW, Attorney-General, for the State.

GANTT, P. J.—The defendant was indicted at the January term, 1898, of the Moniteau circuit court, for grand

larceny.   He was duly arraigned, and at the September term, 1898, was tried and convicted and sentenced to the penitentiary for two years.

The evidence in behalf of the State very conclusively showed that on the third day of December, 1897, a package of money containing five hundred dollars was stolen from the safe of the People's Bank of Tipton, Missouri.   Roy F. Bane was the cashier of said bank and testified quite positively that on the afternoon of December 3, 1897, there were five packages of money, each containing five hundred dollars, in the bank's safe, and that afternoon he made up another or sixth package containing five hundred dollars, and placed it upon the top of the other five packages in the safe.   He testified that defendant was a life insurance agent and was in the habit of frequenting the bank.   On this particular afternoon he came in about 4:30 o'clock.   The cashier was busy.   Defendant came behind the counter.   About five o'clock it became so dark it was necessary to light a lamp.   The defendant according to the cashier offered to assist him in any work that he could do, said they would do the work and get out of the bank. The cashier went to the front counter to count the cash, and at that time defendant asked him if he was through with the books and the cashier answered, "All but one."   Thereupon defendant said, "I'll put them in the vault for you, and we will get out and go out of the bank."   Thereupon defendant made three or four trips into the vault to place the several books in their proper places.

When the cash was counted the cashier found he was out of balance about $60, which item he found next morning.   He requested the defendant to hold the light while he put the cash in the safe and set the time lock.   The cashier did not discover any loss that night, but next morning about 10 o'clock he discovered that the last package he had put in the safe had been abstracted.   His father was vice-president of the bank, and he reported the loss to him.   He also saw the city marshal,

Mr. Clark, and informed him of his suspicions that defendant had taken the package.

That afternoon defendant came into the bank to see the cashier about collecting some premium on a policy and while there the marshal came in and said to the cashier, "Have you said anything to Mr. Rutherford about this matter?" The cashier said he had not, whereupon defendant was told of the loss and their suspicion that he had taken the money. He denied all guilt and then the officer said he would have to search him and asked him to walk into a back room of the bank, whereupon the defendant said, "I'll tell you how much money I have got on my person. I always carry money about me." He then produced $165.35. He first said he had $200 and after he had produced the $165.35, Clark inquired where the balance of the $200 was and he said, "I paid $25 for a suit of clothes to Henry Lutz this morning, and gave my sister $10 last night. She wouldn't charge me any board and I made her a present of ten dollars." The cashier was then called to the front and the defendant said to Clark he was not guilty of that, and didn't want his folks to hear of it. Clark told him Mr. Bane wanted his $500, too. He said, "Well, I am not guilty." When he got to the door Clark stepped up to him and defendant turned around and said, "I am not guilty of stealing that money." Clark said, "Mr. Rutherford, this is a part of the bank's money, and nobody got that money but you." At that point defendant fainted, and fell over in the floor.

He was revived, and then Clark told him he wanted to go and search his room, and according to Clark and Bane he said he didn't want him to do it. He wanted to go home, and after he was at home a little while, Clark could come up and he would have his sister let him in and he could search his room. Finally Clark told him he would attend to that. Defendant said, "Don't you go search my room. You have no right to

search my room without a search warrant.    I forbid you searching my room unless I am present."

The elder Bane and Clark then left defendant at the bank and went to Mr. Newkirk's house, where defendant roomed, Mr. Newkirk being his brother-in-law.    In a closet in defendant's room on a shelf that could only be reached by standing on a chair rolled up in a handkerchief, the elder Bane found $295.    Mr. and Mrs. Newkirk were present when the money was found.    The marshal then came out and saw the defendant pass Mr. Newkirk's house and come around by an alley, and he headed him off and arrested him.

Defendant asked to let him give bond and the marshal agreed to do so and took him to the city hall.    Mr. Newkirk came to the hall and defendant said, "France, I want you to go my bond.    They have got me arrested here.    I am not guilty of the charges they have got me arrested for."    Mr. Newkirk, according to the State's evidence, said, "It appears very suspicious."

Rutherford says, "What looks suspicious?"

"Why, the amount of money found on you and the amount they found in your room."

Defendant said, "They didn't find any money in my room."

Mr. Newkirk said, "They did."

Defendant said, "Who found any money in my room?"

Mr. Newkirk answered, "Mr. Bane and Mr. Clark there."

"Well," he said, "If there was any money found in my room somebody else put it there, I didn't."    Defendant denies this story and says that he said "he didn't know it," that is to say, didn't know they had found the money, but says he didn't disown the money, but says it was his own money.

The State offered much evidence tending to show that immediately before the alleged larceny defendant had no

money, that he was indebted for board and other small bills and statements tending to show he had no means of consequence. The defendant offered evidence tending to show he had earned $425 as insurance agent; that some two years prior to this affair he had sold two horses for $150; that he had money on his person which he had saved. He offered evidence of previous good character for honesty and integrity. At the conclusion of the testimony both the State and defendant asked instructions to the jury.

The court gave the following instructions on the part of the State:

1. If the jury believe from the evidence that the defendant was in the People's banking house at Tipton, Moniteau county, Missouri, on December the third, 1897, and that he entered the vault of the said bank with the consent of the cashier thereof, and that when he entered the said vault the safe containing money belonging to said bank was open and that the defendant then and there took a package of money containing five hundred dollars and appropriated the same to his own use, then you should find the defendant guilty and assess his punishment at imprisonment in the penitentiary for a term not less than two and not exceeding five years.

2. The court instructs the jury that it is not necessary for the State to prove, in order to authorize a conviction of the defendant of the charge in the indictment, that he was seen to take the money alleged to have been stolen from the People's Bank, but it is sufficient if you shall believe from the evidence that the money found in the possession of the defendant, that is, on his person and in the room occupied by him, was a part of the money taken from the bank safe, and in arriving at your verdict you should take into consideration all the facts and circumstances detailed by the evidence; and if you believe from the evidence that the defendant was indebted to divers persons and that he was hard pressed for money and left bills against him outstanding and unpaid and that on the evening

of the alleged theft and the day following he was in possession of a considerable sum of money, and paid bills or accounts previously contracted by him, these and the conduct and acts of the defendant are circumstances which you should take into consideration in determining the defendant's guilt or innocence, and if from all the facts detailed by the evidence you shall believe that the defendant did take the money as charged in the indictment, then you should find him guilty and assess. his punishment as heretofore stated.

I. The first instruction for the State is assailed by the defendant because it does not require the jury to find the essential elements of larceny.

Says CHITTY, in his third volume of Criminal Law, page 917: "To constitute this offense, therefore, in any form, there must be a taking from the possession, a carrying away against the will of the owner, and a felonious intent to convert it to the offender's use." "Felonious" in this connection was defined by Baron PARKE to mean "that there was no color of right or excuse for the act" and the "intent must be to deprive the owner not temporarily, but permanently of his property." [3 Greenl., Evid. (14 Ed.), sec. 150.]

The law as stated in CHITTY and EAST in his Pleas of the Crown, was affirmed by this court in Witt v. State, 9 Mo. 663. In that case an instruction that "if the jury believe from the evidence that the horse belonged to Smith and that the prisoner took and carried away the horse, without the knowledge and consent of Smith, with the intention of selling him or of converting him to his own use, they ought to find him guilty," was held fatally erroneous.

Judge SCOTT speaking for the court, said: "The legality of the conviction must depend on the propriety of the foregoing instruction. Larceny is defined to be the wrongful taking and carrying away of the personal goods of anyone from his possession, with a felonious intent to convert them to the use of the offender without the consent of the owner. [East,

P. C., 553.] The taking must be done *animo furandi*, or as the civilians express it, *lucri causa*. Every felony includes trespass, and every indictment for larceny must have the words *felonice cepit*, as well as *asportavit*. The felonious intent is the *material ingredient* in the offense. . . . . There must be a felonious intent, and where goods are taken possession of on a claim of right, although that right may be unfounded, it is not a felony. . . . . . . The prisoner, then, might have done every act supposed by the instruction of the court without being guilty of a felony. The instruction defined a trespass, and not a larceny, and it was error to have told the jury that the commission of the acts mentioned in it, rendered the prisoner guilty of larceny."

A comparison of the instruction in that case with the instruction numbered 1 above given by the court in this case, will demonstrate that it was much stronger than the one under consideration, and if that constituted reversible error, *a fortiori* does this. Witt v. State, *supra*, has been followed again and again. [State v. Gray, 37 Mo. 463; State v. Shermer, 55 Mo. 83; State v. Ware, 62 Mo. loc. cit. 602; State v. Moore, 101 Mo. 316; State v. Lackland, 136 Mo. 26.]

In this instruction number 1 no fraudulent or felonious intent was required. Attention to the numerous adjudications of our own courts would prevent errors like this.

II. Complaint was made of the rejection of witnesses to prove the good character of defendant in St. Louis and at Blackwater. The court had previously listened to five witnesses from Morgan county and one from St. Louis, all of whom had testified that the general reputation of defendant for honesty and integrity in Morgan county and St. Louis was good. He had resided in Morgan county all his life except about one year and had lived in St. Louis from June to December 24th. The last witness offered from St. Louis had only known defendant from October to Christmas. As the witness from St. Louis was on the stand he might very prop-

erly have been permitted to answer the question, but we are not prepared to say that the trial court committed error in declining to hear more evidence on character after six witnesses had deposed on that subject.    It is very plain that no injury resulted from not hearing witnesses who had merely a casual acquaintance with defendant for two or three months.

III.    The second instruction was loosely drawn.    It should have required the jury to find that the package containing five hundred dollars and belonging to the People's Bank had been stolen and that the money found on defendant's person next day and in his room was a part of the money so stolen from the bank, but these defects do not reach the real vice of this instruction.

The instruction was erroneous because it was a plain comment upon the evidence.    It singled out certain evidence which was properly enough before the jury, and gave it a marked prominence.    The jury were authorized to weigh these circumstances but it was not the duty or right of the court to thus comment upon them.

It was competent and proper for the court to have instructed the jury that it was not necessary to prove the larceny of the package containing five hundred dollars by the defendant by positive or direct testimony, but it might be established by facts and circumstances, and if the jury believed beyond a reasonable doubt from all the facts and circumstances detailed in evidence that defendant took, stole and carried away the said package containing five hundred dollars, the property of said People's Bank, then they would find him guilty, but in order to establish the guilt of the defendant on circumstantial evidence alone, the facts and circumstances themselves must have been proven to the satisfaction of the jury and when proven must not only have been consistent with the defendant's guilt but inconsistent with his innocence of the crime charged.    Had this or a similar instruction been given no error would have been committed in refusing in-

structions numbered 2, 3, 4, 5, 6 and 7, asked by the defendant and refused by the court.

Under the evidence offered by the State we also think the defendant was entitled to the first instruction, which he asked and which the court refused.    It was upon the converse of this instruction that the State asked his conviction, and it was simply fair to him that unless these facts were shown he should be acquitted.

It only remains to consider the action of the court in excluding certain evidence which he offered to show the sale of certain horses and the receipt of the purchase price thereof some eighteen months or a year prior to the larceny charged.

It was competent for the State to show that recently before the alleged theft he was without means and that immediately thereafter he was found in possession of an amount about equal to that stolen and of the same general character of bills.    To rebut this defendant offered evidence that he had worked in St. Louis and in Blackwater and Tipton soliciting insurance and had earned some four or five hundred dollars.

The court admitted this evidence, but excluded the offer as to moneys received for the horses some twelve or eighteen months previously.    The court was right.    This proof as offered was too remote, and besides the offer did not pretend to show that the identical money was still in his hands.    On this point we think the court ruled quite favorably to defendant.

For the errors noted, a new trial should have been granted, and the circuit court erred in not giving it.    The judgment is reversed and the cause remanded for a new trial.

SHERWOOD and BURGESS, JJ., concur.