245 S.W.2d 890 (1952)
STATE
v.
KINARD.
No. 42900.
Supreme Court of Missouri, Division No. 1.
February 11, 1952.
*891 J.E. Taylor, Atty. Gen., Julian L. O'Malley, Asst. Atty. Gen., for respondent.
COIL, Commissioner.
An information filed in the Circuit Court of Jackson County charged appellant with manslaughter. Trial resulted in a verdict and judgment thereon sentencing appellant to five years in the Intermediate Reformatory.
Appellant has filed no brief on this appeal. We therefore consider the assignments of error properly preserved in the motion for new trial. Among such are the contentions that the court should have directed a verdict of acquittal, and that instruction 3 given on the court's own motion was erroneous in that it advised the jury that the only defense in the case was that of accident. We shall refer to appellant as defendant.
There was evidence adduced on the part of the state from which the jury could reasonably find that on March 10, 1950, defendant, 17 years of age, was a student at Manual High and Vocational School in Kansas City, Missouri; that on that date defendant and two other boys had obtained permission to leave school early to attend a police circus. It appears that the two boys other than defendant had by prearrangement planned to attend the circus together and met in the second floor corridor at about 1:20 p. m. Defendant joined them there, apparently by happenstance. The three boys proceeded westwardly in the east-west second floor corridor to stairs at the extreme west end which led to the first floor by two tiers of steps, one leading from the second floor corridor westwardly to a landing, and the other from such landing eastwardly to the first floor. The three boys reached the landing together. Defendant and one of the boys remained there talking with a girl who happened to be present.
For some reason not precisely clear from the record but, by inference, because he knew that deceased, a professor in the school, was looking for him, one of the boys descended the steps to the first floor and walked eastwardly in the first floor corridor for some distance where he met deceased, Ernest B. Hyde, approximately 60 years of age. Deceased accused this boy of an infraction of the rules of proper demeanor during a prior class. The boy denied the infraction and a discussion concerning the matter ensued. The boy, apparently before the professor had completed his conversation, turned and walked westwardly with deceased following him. When the boy had reached the bottom of the steps which he had theretofore descended, the deceased overtook him and resumed the conversation. Deceased placed his hand on the arm of the boy or in some manner took hold of his shirt. Deceased was then standing either on the first or second step from the bottom or on the floor immediately adjacent to the first step, facing southwardly toward the boy who was standing between deceased and the south wall of the corridor and, it may be, slightly to the left of deceased.
While deceased was thus engaged in conversation, the second boy (other than defendant) started down the flight of steps leading from the landing to the first floor and when he had descended about halfway, defendant ran down the steps and with his closed fist struck deceased on the right side of the face or head. As a result of this blow deceased fell to the floor of the corridor landing on his left side, resulting in fractures at the mid-auxiliary line just below the armpit of the third, fourth, fifth, and sixth ribs, and a basilar fracture of the skull on the left side "starting in at about the level of the car and running inward and toward the midline and toward the front so that it involved the bone just above the left eye and involved the bone just back of that over to an area just about at the left ear." Deceased died on March 14 as a result of these injuries and their complications.
It is apparent from the foregoing evidence that the jury could reasonably find defendant guilty of manslaughter. Where death results from unlawful assault and battery and the assault is without malice, the assailant is guilty of manslaughter, even though death was not intended and the assault itself was not such as to be likely to result in the death of the person *892 assaulted. State v. Black, 360 Mo. 261, 269, 227 S.W.2d 1006, 1010 [12]. Here, the jury could reasonably find from evidence that defendant made an unprovoked, unlawful assault and battery upon deceased which resulted in the death of deceased. There is no merit in the assignment that the court erred in failing to direct a verdict of acquittal.
As noted, appellant contends instruction 3 is erroneous. Defendant offered no instructions. The court on its own motion gave, among others, instruction 3, the first paragraph of which is: "The Court instructs the jury that the defense in this case is that Ernest B. Hyde came to his death by accident, and the Court further instructs the jury that it is their duty to properly weigh and consider this defense, and, if there is a reasonable doubt as to whether or not Ernest B. Hyde came to his death by accident, it is the duty of the jury to give the defendant the benefit of such doubt and find him not guilty."
Defendant testified in his own behalf that a statement made to a detective of the Kansas City Police Department on March 12, 1950 was correct and true in every respect except one to be hereafter noted. Defendant's testimony was thus to the effect that he and two other boys went from the second floor to the landing between the first and second floors where defendant and one of the boys remained looking out a window while the third boy went to the first floor and talked with deceased; that this boy and deceased started to argue and the boy walked away; that deceased ran and grabbed the boy but the boy turned and walked away again. "He (referring to the boy) was coming up the steps to meet us. Mr. Hyde grabbed Salvatore again, right at the beginning of the steps." Defendant said that he and the other boy who had remained on the landing with him started down the steps with the defendant in the lead; that he (defendant) hit Mr. Hyde in the face with the back of his hand and that defendant went out the west entrance of the school. This entrance from other testimony and photographic evidence is shown to be at the bottom of a short flight of stairs leading westwardly from the first floor and adjacent to the flight of steps which lead from the landing to the first floor. Defendant further testified that he knew deceased but had never had him as a teacher and did not intend to hurt deceased but struck him merely to get the other boy loose from him.
In the statement referred to, defendant said: "A. I hit Mr. Hyde with the back of my hand, in the face. Q. What did Mr. Hyde do? A. He fell, to the floor." At the trial defendant said that the statement was correct and true except that part: "He fell, to the floor." Defendant then testified that he did not see or hear deceased fall to the floor and did not and does not know whether he fell to the floor. Defendant further testified that he was walking fast at the time he passed deceased and struck him with the back of his hand; that he did not know whether deceased was standing on the floor of the corridor or on the steps at the time, and that the blow was on the right side of deceased's face.
A pathologist, on behalf of the state, testified that he found no bruises or marks on the right side of deceased's head other than a surgical incision; that it would be possible but not probable that a man falling on his shoulder with enough force to break his ribs would, at the same time, hit his head; that a boy who was going down a stairway and hit "a man standing there" with the back of his hand would not fracture his skull and that such a blow would be very unlikely to be a direct cause of injury; that deceased's left eye was black but this would not necessarily indicate that that part of the body had been struck because there was a fracture of the bone above the eye and a hemorrhage infiltrated around the eye which could have caused the discoloration; that there were bruises on the left shoulder.
Further, there was evidence from which it could be reasonably found that after defendant struck deceased with the back of his hand on the right side of deceased's head and at the time defendant turned and immediately left the building, one boy was standing very close to deceased and another boy was descending the steps toward deceased.
*893 There was also testimony adduced by a state's witness, a girl, 15 years of age, to the effect that at the time in question she was descending the steps leading from the second floor to the east end of the first floor corridor opposite the steps at the west end and separated, of course, by the length of the corridor which was variously estimated by her to be about a block long or about 175 feet in length. This girl testified she saw someone strike deceased and saw deceased fall; that she immediately went into the school office on the first floor, the entrance to which was close to the bottom of the steps at the east end of the corridor; that she reported the incident to "a boy at the office" and was told to go to her class; that either immediately after the blow was struck or after she had been in the office and had come back out and was on her way to her classroom she saw a boy, she could not identify, running eastwardly in the first floor corridor and out an entrance which leads southwardly from a point midway in the first floor corridor.
As heretofore mentioned, all the testimony in the case on the subject was that deceased was struck on the right side of his head.
The evidence just reviewed, considered most favorably to defendant, giving defendant the benefit of all favorable inferences to be reasonably drawn therefrom, and without regard to its weight or credibility, constitutes evidence from which the jury could find: that deceased was standing on the floor at the bottom of the steps facing south, arguing with and restraining a certain boy; that as a second boy other than defendant was in the act of descending the steps, defendant, walking fast, went by deceased and struck him on the right side of the face with the back of defendant's open hand; that defendant immediately turned to his left and departed from the building; that at such time deceased remained standing in the same position as when struck by defendant; that an appreciable time thereafter someone ran eastwardly in the first floor corridor and out the middle door at the south side of the building; that there was no mark or bruise or any other evidence of a blow on the right side of deceased's head.
From this evidence, together with the medical evidence noted, it is possible that a jury could believe that a blow to the right side of deceased's head of sufficient force to knock him to the floor causing broken ribs and a fractured skull would necessarily leave some lasting mark of violence on the right side of deceased's face or head; and that a fall caused by a blow to the right side of deceased's head and which bruised the left shoulder of deceased could not at the same time cause broken ribs and a fractured skull. Thus, we cannot judicially say that there was no substantial evidence from which the jury could find that the blow struck by defendant did not cause the death of deceased. The inference was possible from the evidence adduced, as urged by defendant's counsel in jury argument, that a further attack on deceased which resulted in the injuries from which he died must have been made by others after the departure of defendant. In other words, the jury could find that deceased's death was not due to the criminal agency of defendant, which criminal agency is, of course, an essential element to a conviction. State v. O'Kelley, Mo.Sup., 213 S.W.2d 963, 966[1,3].
Any such finding, based upon all the evidence in this case, may seem highly improbable and to make such finding may tax one's credulity. But a defendant is entitled to have any theory of innocence submitted to a jury, however improbable that theory may seem, so long as the most favorable construction of the evidence supports it. State v. Malone, 327 Mo. 1217, 1227, 39 S.W.2d 786, 789[2,3]; State v. Stallings, 326 Mo. 1037, 1045, 33 S.W.2d 914, 917[5, 7]; State v. Aitkens, 352 Mo. 746, 763, 179 S.W.2d 84, 94 [29, 30]; State v. Sumpter, Mo.Sup., 184 S.W.2d 1005, 1006[3,4]; State v. Stone, 354 Mo. 41, 44, 188 S.W.2d 20, 22[7]. An instruction which affirmatively eliminates a theory of innocence or a defense is erroneous. State v. Malone, 327 Mo. 1217, 1235, 39 S.W.2d 786, 793[9]; 23 C.J.S., Criminal Law, § 1317, p. 915.
*894 Instruction 3, reasonably construed, would most likely be understood by the jury as a direction by the court that the only defense, or more accurately, the only theory of innocence, which was available to defendant under the law and the evidence in the case was the defense of accident. Witness this language of the instruction: "The Court instructs the jury that the defense in this case is that Ernest B. Hyde came to his death by accident, and the Court further instructs the jury that it is their duty to properly weigh and consider this defense, * * *." (Emphasis ours.) That such a construction of the language used is compelled or, at best, made highly probable is made more certain by the fact that instruction 2, after hypothesizing certain findings of fact, told the jury that it would find the defendant guilty of manslaughter as charged and then by a separate additional paragraph, further instructed the jury that if it found the striking and killing was accidental, it would find the defendant not guilty. The last two paragraphs of instruction 2 are:
"You are further instructed that if you find and believe from the evidence in this case, that at the time he, the said Howard Kinard struck and killed Ernest B. Hyde (if you so find and believe that the defendant did strike and kill the said Ernest B. Hyde), the striking and killing was accidental as more fully described in other instructions given herein, then you are instructed that you shall find the defendant, not guilty.
"Instruction No. 3 is an instruction on accident."
Then follows the opening line of instruction 3, a part of which has been heretofore quoted. The language of the two instructions considered together makes it probable that the jury may have understood that defendant's theory that the blow struck by defendant was not the cause of the death of deceased was not to be considered by the jury as constituting a basis for his acquittal.
It is true that instruction 2 required the jury to find, as a prerequisite to a conviction, that defendant struck deceased and as a result inflicted a mortal wound of which deceased died, and it is also true that instruction 2 contains a general converse clause: "And unless you find the facts to be as above stated you are instructed to acquit the defendant."
If instruction 3 had not been given and defendant contended that instruction 2 ignored or eliminated a theory of innocence, an entirely different question would be present. Such question is not before us. Rather, here was an affirmative direction by a separate instruction which may be reasonably construed as directing the jury that unless deceased came to his death by accident, defendant should be convicted of manslaughter.
Likewise the question is not before us as to whether the evidence justified an accident instruction. If it did not, defendant certainly gained an advantage to which he was not entitled. But the court, having determined to instruct on accident under the view that it was an essential issue in the case, was obligated to give a correct instruction and not one which eliminated a possible theory of innocence. State v. Aitkens, 352 Mo. 746, 762, 179 S. W.2d 84, 94[24].
Because of our views concerning instruction 3, it will be unnecessary to notice most of the other assignments of error made in the motion for new trial for the reasons that most are unlikely to recur in the event of another trial, and others are not sufficiently definite to preserve anything for review. We notice briefly, however, one of these assignments.
Defendant alleges error in the giving of instruction 2 for the reasons that the instruction assumes that "the hands and fists are deadly weapons as a matter of law," and that it assumes that defendant was guilty without requiring the jury to so find. Without determining whether instruction 2 is reversibly erroneous, we do observe that the instruction is justly subject to both criticisms.
We perceive no reason for the inclusion in an instruction in this case, even by proper hypothesis, the question whether hands and fists are deadly weapons. The information in this case charged manslaughter *895 only. It was unnecessary for the information to charge or for an instruction to contain any reference to or question concerning hands and fists being deadly weapons.
As to the matter of the instruction assuming the guilt of defendant, it appears that the instruction hypothesizes the finding of certain facts before a finding of guilt may be made, but after so doing, it then instructs: "* * * then you will find the defendant guilty of Manslaughter as charged in the Information and shown by the evidence * * *." (Emphasis ours.) Certainly the state's main instruction should be drawn in such a manner as to eliminate the possibility that it may be construed as assuming that the evidence shows the guilt of defendant.
For error in giving instruction 3, the judgment is reversed and the case remanded.
VAN OSDOL, C., concurs. LOZIER, C., dissents.
PER CURIAM.
The foregoing opinion by COIL, C., is adopted as the opinion of the court. All concur.