The STATE of Missouri, Respondent,

v.

William Orbrie GAILES, Appellant.

No. 53140.

Supreme Court of Missouri,
Division No. 1.

June 10, 1968.

Norman H. Anderson, Atty. Gen., Jefferson City, Dennis J. Quillin, Special Asst. Atty. Gen., Clayton, for respondent.

Gray & Friedman, Charles E. Gray, C. Marshall Friedman, St. Louis, for appellant.

HOUSER, Commissioner.

William Orbrie Gailes, convicted by a jury of illegal possession of a stimulant drug, § 195.240,[1] under the Second Offender Act, § 556.280, and sentenced by the trial judge to six years' confinement in the penitentiary, has appealed.

There was substantial evidence tending to establish these facts: At 11:15 p. m. Rose Rhodes and a man emerged from the three-story private residence building at 4229 Westminster in the City of St. Louis and walked onto an adjacent parking lot. The building had been under surveillance by St. Louis police officers for approximately one month. Officers Flynn and Lodl, who were parked west of the building, drove in the police car onto the lot and "pulled up" to the man and woman as the latter reached the man's parked car. Officer Flynn observed the woman, hereinafter "Rose," drop a tinfoil packet to the ground and put another small tinfoil packet in her mouth. Officer Flynn picked up the tinfoil packet from the ground, arrested Rose for possession of narcotics, and advised her of her constitutional rights. He then handcuffed her and attempted to retrieve the object in her mouth. She resisted, kicked and fought, but finally spit it out and it was recovered by the officer. The officers did not then know that the white powder in the packets was a drug but from previous experience they suspected narcotics. A laboratory test the next day revealed that the powder was dextro-amphetamine-hydrochloride, a stimulant drug. Two more police officers, summoned for assistance, arrived on the scene. Officer Flynn placed Rose in the police car and asked her if she had any narcotics or stolen property in her house. She answered in the negative. The officer asked her if she "would mind" if the officers "went up and looked" and she said "No." The officers did not have a search warrant. The handcuffs were removed. Rose unlocked the front door of the house with her key and admitted Officers Flynn, Venz, and Feelson. Rose accompanied the officers to the second floor where her apartment was located. The door to the apartment was wide open. As the officers neared the door Officer Venz observed the defendant and another man standing in the apartment. Defend-

1. All section references are to Revised Statutes of Missouri, 1959, and V.A.M.S.

ant had something in his hand. Not knowing then what the object was, Officer Venz drew his pistol. As Officer Venz entered the room he saw defendant drop from his right hand or throw to the floor a four-inch cylindrical container, red and white in color, with lettering on it. When it fell to the floor it rolled a foot or so from the place where defendant was standing. Officer Venz retrieved, opened, and found it to contain three aluminum foil packs. There was a white residue on the interior of the container. Officer Venz put the container in his pocket and placed defendant under arrest for the possession of narcotics. Laboratory tests showed that the white powder was the stimulant drug dextro-amphetamine-hydrochloride.

The apartment was rented to Rose. She had given defendant a key. Defendant used the apartment from time to time with her permission. This was one of twelve apartments in the building.

Defendant filed a motion to suppress on which the court conducted a pretrial hearing. Defendant introduced evidence. Rose testified that she refused to give the officers permission to go up to her apartment; that the officers took her keys from her, ordered her to accompany them, and told her to "shut up and stand still." Officer Flynn testified to the previously related facts indicating that Rose consented to the officers' entry into her apartment. The court overruled the motion to suppress. When the case came on for trial defendant filed a new motion to suppress substantially the same as the original motion and asked for an evidentiary hearing. The trial judge stated his understanding that a motion to suppress evidence is a pretrial motion; that in the absence of any new evidence the motion would be overruled, and suggested that at the time the state offered any evidence defendant thought should be suppressed, defendant "make your motion or your objection then." At the trial proper, when the state's witness sought to describe the four-inch cylindrical container, defendant objected that the evidence was "unconstitutionally received" and stated that the court ought to again hear the testimony (on the question of suppression of the evidence). The court overruled the objection, stating that the motion to suppress had been ruled on in the assignment division prior to trial. After having been properly identified the contents of the container were received in evidence.

The first question is whether the court erred (1) in overruling appellant's motion to suppress the container of amphetamine hydrochloride and in (2) admitting the same in evidence at the trial. Appellant claims that the container was obtained as a result of an unlawful search of premises by officers who had no search warrant and no valid reason to search the premises, and that he, the appellant, had standing to complain of the invalidity of the search by reason of the fact that he was using the premises with the permission and consent of the tenant Rose.

◼ The court did not err in overruling the motion to suppress. The evidence in question was not obtained in an illegal manner. It is true that the officers did not have a search warrant to justify their entry into the apartment. It is likewise true that their entry may not be justified on the ground that they were searching the apartment as an incident to a lawful arrest. The arrest of Rose was completed. She was arrested at the parking lot adjacent to the rooming house property, which was not shown to be any part of the premises in which Rose's apartment was located. See Agnello v. United States, 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145, 51 A.L.R. 409; Hernandez v. Superior Court, 143 Cal.App.2d 20, 299 P.2d 678 [2]. Since the officers had no right to search Rose's home as an incident to her arrest, they were not justified on that ground in entering premises to which defendant had access and (let us assume) equal rights of occupancy and privacy.

Under Officer Flynn's testimony, however, the entry of the officers into the apartment was lawful for the reason that it was acquiesced in and consented to by Rose, the tenant who rented the apartment. It is true that at the pretrial hearing of the motion to suppress Rose testified that she did not give her consent to their entry. This created a conflict in testimony involving the credibility of the witnesses which was resolved in favor of the state by the action of the trial court in overruling the motion to suppress. There was substantial evidence to support the trial court's determination of this evidentiary fact.

Therefore, even though we assume that defendant had "standing" to object to unauthorized entries into the apartment, the entry of these officers was not unauthorized but on the contrary was permitted and acquiesced in by Rose. As owner and possessor Rose had a right to admit the officers and defendant (who was present with the permission of a person having a paramount possessory interest) is not entitled to assert that the entry of the police officers was unlawful. Rose's authority in the premises as tenant exceeded that of defendant, and "certainly such person may authorize an entry onto the premises contrary to the wishes of another who has far less authority." State v. Stuart, Mo.Sup., 415 S.W.2d 766, 768.

Defendant's claim that the search was unlawful does not take into consideration the fact that the can of drugs was not discovered in some place of concealment as a result of a search of the premises, but was discovered in plain and open view of officers lawfully on the premises by invitation. State v. Jefferson, Mo.Sup., 391 S.W.2d 885, l. c. 889 [8]. As the officers reached the second floor the door to the apartment was open. The officers observed defendant standing in the apartment with some article in his hand. As they entered the door the defendant dropped the article, a can, to the floor. The officers retrieved, opened, and found it to contain a white powdery substance. From their experience the officers reasonably suspected that it was a drug, a suspicion confirmed by laboratory analysis the next day. The container was not seized in the course of an unlawful search. "Where the articles sought to be suppressed were in plain sight of the arresting officer, were dropped or thrown away by the person arrested, and were picked up by the officers, the articles are admissible in evidence over an objection that they were seized as the result of an unlawful search." State v. Jefferson, supra, 391 S.W.2d, 1. c. 888 [3]. In State v. Baines, Mo.Sup., 394 S.W.2d 312, officers went to defendant's residence to investigate a complaint. Defendant opened the door, and as he stood there in plain view of the officers defendant dropped an envelope containing marijuana. One of the officers picked it up. This was held to constitute no violation of defendant's constitutional rights with respect to search and seizure, for the reason that these facts demonstrate the commission of a felony—illegal possession of a drug—in the presence and within the observation of the officer, thereby justifying the arrest of the defendant. And see State v. Owens, Mo.Sup., 391 S.W.2d 248. What was said in Stuart is apropos here: "After the police were lawfully in the apartment they saw the defendant engaged in the commission of a felony in their presence, and for that reason the arrest of defendant was lawful, and the seizure of the [can containing the drug] was authorized." State v. Stuart, supra, 415 S.W.2d, 1. c. 768 [8]. The court properly overruled the motion to suppress.

Appellant complains that he was not permitted to establish the unlawfulness of the search. This complaint, based on the fact that the court sustained the state's objection to defendant's question inquiring of Officer Flynn what he advised Rose when he advised her of her "constitutional rights," is not well taken. The court rightly considered that it was

*defendant's* constitutional rights that were involved, and not Rose's, and properly ruled on the objection. Defendant was not denied but on the contrary was given every opportunity to establish the unlawfulness of the search and of the arrest of defendant, but simply failed to sustain the burden which rests upon a defendant to "affirmatively demonstrate the illegality of the search and seizure." State v. Medley, Mo.Sup., 400 S.W.2d 87, l. c. 88.

■ The court did not err in admitting the contents of the can in evidence at the trial. When a motion to suppress evidence is overruled in a pretrial hearing the only determination for the trial court at the trial proper is "whether the confiscated evidence is competent and relevant." State v. Stuart, supra, 415 S.W.2d, l. c. 767. There is no question that the drug was competent and relevant evidence in this case.

The next question is whether Instruction No. 2 erroneously assumed ultimate facts and commented upon the evidence.

In main verdict-directing Instruction No. 1 the jury was authorized to convict defendant upon a finding among other things that defendant had in his possession a drug designated by the division of health to be a stimulant and "if you further find that said drug was a stimulant." Instruction No. 2 follows:

"The Court instructs you that in determining whether or not the *stimulant drug* (Dextro - Amphetamine - Hydrochloride) mentioned in the evidence was in the possession of the defendant, you may take into consideration all the facts and circumstances in evidence. It is not necessary for the State to prove the intent on the part of the defendant to use said *stimulant drug,* or to prove that he intended that said *stimulant drug* be used in any particular manner, if you find that he had it in his possession. It is sufficient for the State to show that the *stimulant drug*

was in his custody and possession, knowingly and intentionally.

"The intent with which an act is done may be proved by direct and positive testimony, or the intent may be inferred from all the facts and circumstances surrounding and attending the act, as shown by the evidence in the case, and any intent in this case must be determined by the evidence given in this case."

■ Appellant contends first that the *underscored* words clearly assumed that the drug was a stimulant, and overemphasized the court's direction in this respect. Considered alone and without reference to other instructions Instruction No. 2 assumes that the substance in question is a stimulant drug. We are of the opinion, however, that No. 2, considered in conjunction with No. 1, which exacted and compelled as a prerequisite to a finding of guilt that the jury make an express finding that defendant had in his possession a drug which was a stimulant, would not have led any reasonably intelligent jury to conclude that the trial court was assuming or directing in No. 2 that the substance in question was a stimulant drug. The first reference in No. 2 to "the stimulant drug" was followed by the words "mentioned in evidence," which of necessity included the evidence that the substance was a stimulant drug. Twice the drug was referred to in No. 2 as "said stimulant drug," which obviously referred to the "stimulant drug" hypothesized and submitted in No. 1. All of the several separate instructions constituted a single charge to the jury and must be considered as a whole. State v. Lee, Mo.Sup., 404 S.W.2d 740, 749 [22, 23]. The first paragraph of No. 2 consisted of guidelines for the assistance of the jury in determining whether the contents of the can were "in the possession" of the defendant. It explained what could be taken into consideration; what were essential and what were nonessential elements of proof. Any such explanation would necessarily be

based upon the supposition that the contents of the can were a stimulant drug, which was the first fact the jury had to find before No. 2 came into play. It would have been preferable not to deliver the explanation in an abstract or hypothetical form. The use of assumptive language in this type of instruction is not desirable but in this instance we believe that the jury would have understood that the assumptions in No. 2 were made only for the purpose of explaining and defining what constituted "possession." We conclude that the defendant was not prejudiced by the first paragraph of No. 2, and that the jury would not have understood, because of the assumptions made in No. 2, that it could find defendant guilty of the charge of possession of a stimulant drug without first finding and believing beyond a reasonable doubt that the substance in question was a stimulant drug. State v. Chesser, Mo. Sup., 293 S.W.2d 935 [8–10]; State v. Duncan, Mo.Sup., 316 S.W.2d 613 [7–10].

■ Appellant further contends that the second paragraph of No. 2 and particularly the words "as shown by the evidence," assumes that the evidence satisfied the element of intent required to be found and constitutes a comment on the evidence, citing State v. Kinard, Mo.Sup., 245 S.W.2d 890; State v. Chinn, 153 Mo.App., 611, 133 S.W. 1196, and State v. Rutherford, 152 Mo. 124, 53 S.W. 417. These are not analagous situations. For instance, Kinard criticizes a verdict-directing instruction authorizing a conviction of manslaughter "as charged in the Information and shown by the evidence" on the ground that the quoted language might be construed as assuming that the evidence shows the guilt of defendant. No such situation is presented here. The words "as shown by the evidence" occurring in the second paragraph of No. 2 are innocent of any improper reference or connotation and could not possibly have adversely affected the rights of appellant.

■ Appellant makes the further contention that he was denied his constitu-

tional guarantee of the compulsory attendance of witnesses. Appellant, desiring to have Rose as his witness, caused a subpoena to be issued for her. When it was served on Rose she was an inmate of the city jail. The day before the trial Rose was released on probation. She failed to appear at the trial in response to the subpoena. From the remarks of the trial judge it appears that an attachment was issued to bring the witness before the court but the record does not show the issuance or execution of the writ. Appellant's counsel suggested in the alternative that if Rose could not be found defendant desired to introduce "in lieu of her testimony" Rose's testimony at the hearing on the motion to suppress. The court adjourned at 3:32 p. m. on March 16 until 9:30 a. m. on March 17 to enable the missing witness to be found. During that time defendant made further efforts to find Rose. These efforts were nonproductive. When the court convened on March 17 defendant orally moved the court to declare a mistrial on the ground that the testimony of Rose was vital and material to the defense. This motion was overruled. Counsel for defendant and for the state then stipulated that certain parts of Rose's testimony at the previous hearing be read. Pursuant thereto her testimony was read to the jury wherein she stated that the officer did not ask her if it was all right if he went upstairs to her room; that he directed her to follow him upstairs into her room; that he entered the room before Rose; that the officers searched the room, "went through her drawers and closet and things"—tore the room up—and told her to stand still; that they found nothing in her room, but said they "found something on him."

Appellant did not and does not charge intentional impropriety on the part of the sheriff in releasing Rose on probation the day before the trial started. On the contrary he attributed her release to a mistake or misunderstanding on the part of the officers. Appellant, however, argues

that it was the duty of the sheriff to "go at least once to the place of residence of such witness to seek" her, quoting language appearing in State v. Huff, 161 Mo. 459, 61 S.W. 900, 910, and states that there was no evidence that the sheriff did so. Nor is there any evidence that the sheriff did not do so. The burden of showing that the sheriff did not make any additional effort was on defendant. Defendant's counsel attempted to locate Rose at her residence after she was released from jail but failed to find her. Appellant was accorded the normal procedures available to procure the attendance of the witness (subpoena and attachment) and there is nothing to indicate that the state or the officers of the law interfered with or frustrated their use or effectiveness. The court granted an 18-hour recess for the purpose of facilitating the appearance of the witness. Appellant is in the unfortunate position of any litigant whose witnesses, duly subpoenaed, disobey the command of the subpoena and absent themselves. Appellant's request that in the alternative he be allowed to read from Rose's previous testimony was granted. In this situation we cannot find that appellant was deprived of any constitutional right, or prejudiced in any way by the action of the court.

Appellant suggests in his brief that the court abused its discretion in not granting a continuance until the presence of Rose could be obtained. There was no such request, either orally or by way of a written motion, for continuance as provided for in Criminal Rule 25.08, V.A.M.R. The court cannot be convicted of error in not granting a continuance in the absence of a motion for a continuance.

The amended information, verdict, judgment and sentence are sufficient. The penalty is within the maximum sentence under § 195.270 as amended Laws 1963, p. 363.

No error appearing, the judgment is affirmed.

WELBORN and HIGGINS, CC., concur.

PER CURIAM.

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

All of the Judges concur.