STATE of Missouri,
Plaintiff-Respondent,

v.

Burton WOODS, Defendant-Appellant.

No. 46730.

Missouri Court of Appeals,
Eastern District,
Division Five.

Nov. 8, 1983.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Dec. 13, 1983.

Richard H. Sindel, Clayton, for defendant-appellant.

John Ashcroft, Atty. Gen., Kelly Klopfenstein, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

J. BRENDAN RYAN, Special Judge.

Defendant-appellant, Burton Donald Woods, III, was found guilty of capital murder by a jury in St. Louis County who assessed punishment at life imprisonment without the possibility of probation or parole for 50 years. The trial court sentenced him in accordance with the jury verdict. He appealed the judgment to the Supreme Court of Missouri which transferred the cause to this court. We affirm.

Defendant does not question the sufficiency of the evidence, so we may be brief with the relevant facts. On April 10, 1979, at 2:45 a.m., defendant was stopped for speeding in north St. Louis County. While visibly angry, he apparently was not drunk. Approximately fifteen minutes later, in response to a prowler call at the St. Louis County apartment of Kasandra Gaines, a policeman encountered defendant outside her apartment door. Defendant identified himself to the officer. Ms. Gaines, recognizing defendant as a fellow employee, admitted him to her apartment, so the officer left. Later that same morning, her upstairs neighbor was awakened around 4:00 a.m. by loud noises, but returned to sleep. Ms. Gaines was discovered fatally stabbed the following morning in her apartment by her mother. Defendant was questioned the next day by police and subsequently confessed to her murder. Evidence of defendant's insanity, aggravated by and occasioned by alcoholism, was presented as his defense.

Defendant raises four points on appeal. These points, in summary, concern: venire panel selection, issuance of subpoena or body attachment for a witness, funds for expert witnesses for defendant, and improper admission of his confession.

 In his first point, defendant alleges that the trial court erred in excusing for cause certain members of the venire and in not excusing certain other members upon defendant's motion to strike for cause, thereby compelling defendant to utilize his peremptory strikes needlessly to remove persons properly excusable for cause.[1] Defendant's argument intimates partiality by the trial court toward the prosecution because it granted all of the state's requested strikes for cause, but denied all of defendant's challenges for cause to which the state objected. Nothing in the record supports any hint of impropriety. Our scrupulous review of the trial court's action in an exhaustive four day jury voir dire substantiates our finding.

 At the onset, we note that the trial court has the authority to strike prospective jurors on its own motion and is not limited to the strict terms of the applicable statutes when ruling on the competency of prospective jurors. *State v. Marshall,* 571 S.W.2d 768, 777[6] (Mo.App.1978). The trial court sua sponte excused for cause two prospective jurors with no objection by either the state or the defendant. Defendant now complains belatedly of the trial court's action. A challenge made for the first time after conviction can only be considered for plain error resulting in a miscarriage of justice or manifest injustice. *State v. Ofield,* 651 S.W.2d 190, 193[4] (Mo.App. 1983). The record clearly reflects that the trial court's independent examination of these two persons established that one appeared intoxicated, shakey and unable to answer questions responsively while the other person indicated her bias because of criminal charges filed against her son with his preliminary hearing still pending. As to the removal of these two persons from the jury panel, we find neither a miscarriage of justice nor manifest injustice.

Also in his first point, defendant complains that, upon the state's challenge for cause and over his objection, the trial court erroneously excused Mrs. Woodson, a prospective juror, who indicated her religious beliefs would prevent her from imposing the death penalty. Defendant relies upon *Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). *Witherspoon* held that exclusion of all members of a venire who have conscientious scruples against or who are opposed to capital punishment but who did not state that they would automatically vote against the imposition of the death penalty irrespective of the evidence was violative of the Sixth and Fourteenth Amendments to the Constitution of the United States in that it deprived defendant of an impartial jury panel and

---

1. Counsel cites over 25 cases in his first point relied on. We focus our attention on the first three cases cited, since the three authorities principally relied on shall be cited first and long lists of citations should not be included. Rule 30.06(d).

would deprive him of his life without due process of law. This opinion did not involve the right to exclude a juror who could never vote to impose or refuse to consider imposition of the death penalty.

We are not faced with a *Witherspoon* problem. Here, Woodson categorically stated she could not consider imposition of the death penalty. She could not follow the law and consider the full range of punishment of both the death penalty and life without parole as possible sentences, if the defendant were found guilty. The state, no less than the defendant, is entitled to an impartial jury. *State v. Brady*, 649 S.W.2d 240, 244[6] (Mo.App.1983). It would have been unfair to require the state to use a peremptory challenge to unseat a juror who had demonstrated such a bias. *State v. Denmon*, 617 S.W.2d 132, 134[3] (Mo.App. 1981). Just as a juror who would automatically vote to impose the sentence of death upon a finding of guilt regardless of circumstances may be challenged for cause, *State v. Smith*, 649 S.W.2d 417, 425[10] (Mo. banc 1983), a juror who would automatically refuse to consider imposition of the death penalty may also be stricken for cause. The venireman indicated a very real possibility of being sympathetic to the defendant on the issue of punishment. The propriety of the trial court's ruling on the state's motion to strike was unassailable.

Defendant's third and final prong in his first point asserts that the trial court erred in overruling defendant's challenges for cause of four venireman, none of whom served on the jury.[2] The principals governing jury selection in this state are well established and frequently iterated. Of these principals, our Supreme Court has said:

> Among others is the right of the criminal [sic] accused to fair and impartial jurors who will follow the law. To protect the defendant's right to a jury free from objectively demonstrated and subjectively sensed partiality, he must be afforded a full panel of qualified venireman from which to make his allotted peremptory

challenges, (citation omitted). While trial court refusal to sustain a valid challenge for cause constitutes reversible error, (citation omitted), it is well established that the trial court has wide discretion in determining the qualifications of a venireman, and its decision thereon will not be disturbed absent a clear abuse of discretion and real probability of injury to the complaining party (citation omitted). A clear line cannot be drawn for all cases as to when a challenge for cause should be sustained; there will be instances in which an appellate court might have done differently but cannot say there was an abuse of discretion; each case must be judged on its particular facts; a determination by the trial judge of the qualifications of a prospective juror necessarily involves a judgment based on observation of his demeanor and, considering that observation, an evaluation and interpretation of the answers as they relate to whether the venireman would be fair and impartial if chosen as a juror. (citation omitted). Because the trial judge is better positioned to make that determination than are we from the cold record, doubts as to the trial court's findings will be resolved in its favor (citation omitted). *State v. Smith*, 649 S.W.2d 417, 421–422[2–7] (Mo. banc 1983).

At trial and in defendant's motion for new trial, defendant sought removal of venireman Uzzle for cause on the grounds of his stated inability to consider the defense of intoxication. On appeal, he argues Uzzle's inability to weigh impartially an insanity defense provided cause for his disqualification. Thus, defendant now pursues a claim which he has not preserved for our review. The issue as to venireman Uzzle is reviewable only from manifest injustice under Rules 29.11(d) and 29.12. Uzzle indicated some skepticism regarding the believability of testimony of psychiatrists concerning mental disease or defect. However, at no time did he indicate he would be unable to be fair to defendant. Earlier in

---

**2.** Defendant later removed these venireman in the exercise of his nine peremptory challenges.

the course of the voir dire he acknowledged both the presumption of defendant's innocence and the burden of proof upon the state to overcome that presumption. The facts of this case do not convince us to find manifest injustice in the inclusion of Uzzle on the venire panel.

Venireman Nicholas expressed equivocation regarding his ability to fairly judge the testimony of psychiatrists concerning mental disease. Defendant cites *State v. Williams,* 643 S.W.2d 832 (Mo.App.1982) for the proposition that whenever a venireman expresses uncertainty, a trial judge must conduct a thorough examination. Since the trial judge here did not do so, he concludes *Williams* mandates reversal. We do not agree.

*Williams* concerned a venireman who professed he accorded greater weight and credibility to the testimony of police officers than that of other persons because of his prior employment with law enforcement. In the face of his avowed bias the court still failed to question him. *Williams* had three elements which, taken in their totality, compelled this court's reversal: 1) the venireman's prior police affiliation; 2) his expressed favoritism toward the testimony of police officers as a generic class; and 3) the lack of independent examination by the trial court.

■ Venireman Nicholas did not categorically state he would not consider a defense of temporary insanity. When asked if he would "try to apply the law as instructed," he replied he would "try," echoing the form of the question in his answer. He clearly conveyed the idea that his personal opinion of the insanity defense would not stand in the way of his following the court's instructions. And whatever personal opinions a juror has about the merits of the law are immaterial except when they are so unyielding as to preclude a juror from following the court's instructions. *State v. Betts,* 646 S.W.2d 94, 98[1] (Mo. banc 1983). Our searching review of the entire voir dire of Nicholas reveals no intransigence by him. Keeping in mind the standard of review excerpted herein from *State v. Smith,* 649

S.W.2d at 421–422, we find no error in the trial court's decision concerning Nicholas.

■ Venireman Horn expressed doubts upon learning of the existence of defendant's prior convictions. But, in response to close examination by the court, he stated he could be a fair person and apply the law as given in the instructions. Defendant's reliance again upon *Williams* is misplaced because here the trial court posed searching questions. The active efforts of the judge to discern possible juror bias in this venireman distinguishes the case from *Williams.* No error resulted from the trial court's refusal to strike venireman Horn for cause.

■ Finally, defendant attacks the retention of venireman Robinson who also expressed skepticism of the psychiatric defense. We note, as with venireman Uzzle, that defendant's basis for error in his motion for new trial is not the same ground argued here on appeal, and, therefore, is not properly preserved. We review it only for manifest error. Rules 29.11(d) and 29.12. Defendant's argument emphasizes that, in response to defense counsel's inquiry "is it a fair statement that you want to but are not sure that you could be fair?", Robinson replied "yes." We note that qualifications of a prospective juror are not determined conclusively by a single response but are made on basis of entire voir dire examination. *State v. Smith,* 649 S.W.2d at 425–26[12]. The extensive examination of Robinson by both the trial court and the state reveals Robinson unequivocally stated that he could follow the trial court's instructions and decide the case based on the evidence adduced. In light of these facts, and again, giving due regard to the trial court's opportunity to view the prospective juror, we find neither manifest injustice nor miscarriage of justice resulted from the trial court's failure to strike him for cause. In conclusion, defendant did not have a right to any particular juror and if he has not been injured, he cannot complain as long as the jury selected was a fair and impartial one. *State v. Denmon,* 617 S.W.2d at 134[4]. Defendant does not assert, much less demonstrate, that the jury as chosen

was unfair or partial. We rule against defendant on all aspects of his first point.

■ Defendant's second point alleges the trial court abused its discretion in failing either to subpoena or to order a body attachment to compel attendance at trial of a witness for the defendant in violation of defendant's constitutional guarantee of compulsory attendance of witnesses. The issue arose during defendant's cross-examination of one of the police officers who had investigated the homicide. His police narrative contained statements made to him by Debrah Selsor, the victim's downstairs neighbor, who reported to the police about certain events the night of the homicide. At trial, the state objected to defense efforts to elicit her hearsay statements from the policeman's report. Defense counsels responded with their inability to secure Selsor's attendance at the trial, despite their personal efforts to subpoena her. They asked the court to issue a body attachment for her. The court refused the request upon learning defendant had not successfully served Selsor with a subpoena but had instead left the subpoena with an unidentified male, presumably her brother, at the home of her mother where she was staying temporarily. Defendant then asked the court to issue its subpoena for her. The court denied the request, directing defendant to pursue the usual and normal avenues of the subpoena process available. Defendant was accorded ample opportunity following the judge's initial suggestion to him that the sheriffs serve the subpoena before the trial was concluded. Had defendant pursued this route, and still been unable to secure the witness's attendance at the trial despite a validly served subpoena, then its motion for a writ of body attachment would be well taken. However, absent a witness's failure to obey a validly executed subpoena (so that the witness was "duly summoned"), the court has no statutory authority permitting it to issue a writ of attachment for the body of the witness. §§ 491.150 and 491.-160 RSMo 1978. Here, defendant presented no evidence that the subpoena was validly served. Therefore, the trial court clearly did not abuse its discretion in refusing to issue the writ of attachment for the witness's body.

■ As to the court's denial to issue a subpoena from the bench for the witness, we find no clear abuse of discretion. It is understandable that where the personal efforts of defendant's counsel to serve the subpoena on the witness were futile, defendant would desire to add the imprimatur of the court by having a sheriff or court officer cloaked with judicial authority make the second attempt. But defendant was not precluded from securing a subpoena without the active intercession of the court. Rule 37.41 provides:

> The prosecution and the defendant shall be entitled to process for witnesses to be issued by the judge *or the clerk* of the court and directed to the sheriff of any county or any peace officer of any municipality in the state in which such witness may be as in civil cases. (emphasis added).

Defendant need only have obtained a blank subpoena form from the circuit court clerk's office, filled in the appropriate blanks and taken the subpoena with a check for service fees next door to the sheriff's office for the sheriff to serve. Nothing more was necessary. Defendant was "accorded the normal procedures available to procure the attendance of a witness (subpoena and attachment) and there is nothing to indicate that the state or the officers of the law interfered with or frustrated their use or effectiveness." *State v. Gailes,* 428 S.W.2d 555, 561[9] (Mo.1968). We rule this point against defendant.

■ Defendant next alleges that the trial court erred in denying defendant's motion for funds to employ expert witnesses in violation of his rights to fully and adequately prepare his defense. Specifically, he complains of a denial of funds to employ the following: a demographer, statistician, serologist, criminologist, hair analyst, and psychologist. Unaided by these independent expert witnesses, defendant contends his counsel was unable to effectively present a defense or cross-examine the

state's witnesses. The record supports a contrary finding. Defendant's trial counsel was afforded ample opportunity in cross-examination of the state's expert witnesses and, despite any inexperience, exercised that prerogative skillfully.

■ Defendant argues a great disparity existed between the resources of the state and that of defense counsel because defendant had access only to two expert witnesses, the two doctors who testified concerning defendant's mental state. However, our review of the record reveals that defendant himself admitted having been examined by, in addition to these two psychologists and the psychiatrist for the state, two other doctors. Of these two doctors one was endorsed by defendant as a witness, although the endorsement was subsequently withdrawn. Thus, defendant's own testimony dispelled that he was short-changed by a dearth of funds for medical experts. As to the remaining panoply of expert witnesses for whom defendant sought funding, we find no abuse. Our Missouri Supreme Court has ruled that the state is not constitutionally mandated to provide such services at public expense. *State v. Holland,* 653 S.W.2d 670, 678[12] (Mo. banc 1983). Whether to provide public funds to aid an accused in the preparation of his defense is within the discretion of the trial court. *Id.* We cannot say whether defendant made the requisite showing of their necessity to warrant the attendance of these experts. The record before us is bereft of evidence that the trial court did or did not state reasons for its actions because we have only docket minute entries before us and no order from the court. Assuming, arguendo, no separately written order overruling defendant's pretrial motions was prepared, implicit in the trial court's denial is its finding that expenditures for these witnesses were unnecessary. Defendant could have requested the court make such findings in a written order had he so desired. Still further, in order to complain successfully about the refusal to authorize investigative services, defendant would have to demonstrate how that refusal resulted in prejudice to him. *State v. Carroll,* 629 S.W.2d 483, 489 (Mo.

App.1981). No showing of prejudice has been made in this case. The point is without merit and denied.

■ In his final point, defendant attacks the admission at trial of his confession. He claims the evidence at his suppression hearing was insufficient to establish that his confession was voluntary and not coerced by promises of leniency and professional treatment. Our standard of review has been clearly outlined in *State v. LaRette,* 648 S.W.2d 96, 104–105 (Mo. banc 1983), quoting *State v. Hughes,* 596 S.W.2d 723 (Mo. banc 1980) at 726–27:

> When a criminal defendant alleges that his inculpatory statements, made while he was held in custody, are not admissible because involuntarily made, the state must bear the burden of proving the voluntariness of the confessions. *Miranda v. Arizona,* 384 U.S. 436, 479, 86 S.Ct. 1602, 1630 16 L.Ed.2d 694 (1966). A confession is admissible if the state proves by a preponderance of the evidence that it was voluntary. *Lego v. Twomey,* 404 U.S. 477, 482–87, 92 S.Ct. 619, 623–25, 30 L.Ed.2d 618 (1972); *State v. Olds,* 569 S.W.2d 745, 751–52 (Mo. banc 1978). The state must show that 'defendant was effectively advised of his rights and he then intelligently and understandingly declined to exercise them.' *State v. Alewine,* 474 S.W.2d 848, 851 (Mo.1971).

> The determination of the voluntariness of a statement is made in the first instance by the trial court. The trial court must determine the credibility of witnesses, and where evidence is in conflict, make factual findings. On appeal, the question is 'whether the evidence was sufficient to sustain the trial court's finding that the statement was voluntarily given.' *Alewine,* 474 S.W.2d at 852.

Since defendant makes no claim of physical coercion or threats in connection with the statements, the issue narrows to whether some type of impermissible mental coercion or promises were employed or circumstances combined made the confession involuntary. In determining whether a confession

was obtained by mental coercion, the age, experience and intelligence of the accused must be considered along with all other circumstances, *State v. Flenoid*, 642 S.W.2d 631, 634 (Mo. banc 1982). Other factors include gender, lack of education, infirmity, and unusual susceptibility to coercion. *Id.*

With these principles as our lodestone, we review the adequacy of the evidence to support the trial court's expressed findings that defendant's statements were voluntarily made. Testimony at the suppression hearing showed that on the afternoon of April 11, 1979, Detective Holt talked with defendant at his place of employment. Holt advised defendant then of his *Miranda* rights. After the initial conversation, defendant agreed to accompany the officer to the police station for further. questioning. After having received his *Miranda* rights a second time, defendant signed a waiver form. Detective Holt continued to interrogate the defendant who denied having killed Ms. Gaines and agreed to take a polygraph test. He entered the room alone with Officer Bright, the polygraph examiner. About ten minutes later, the examiner told Detective Holt the defendant wanted to talk with him.

We recognize that a confession is not admissible if it was extracted by promises, direct or implied, however slight. *State v. Chandler*, 605 S.W.2d 100, 117[3] (Mo. banc 1980). Defendant attempts to characterize as a promise of leniency the statements purportedly made by Detective Holt and Officer Bright to defendant during the interrogation. We cannot see that defendant's testimony indicates any promises were made to him that he would receive a lesser charge or better treatment for his mental problems if he would confess. Certainly under the circumstances with all of the warnings that were made to him at the time, his confession cannot be construed as an involuntary statement.

In *State v. White*, 622 S.W.2d 939 (Mo. banc 1981), in addressing the issues of voluntariness of defendant's confession, where defendant was told he would be released or let go pending a decision to indict by the grand jury, our Supreme Court rejected defendant's claim that his release was an implied promise of leniency or that his release was contingent upon the making of a statement. Similarly, this court held in *State v. Huffman*, 607 S.W.2d 702, 703, 706[12] (Mo.App.1980) that a statement which the officer made to defendant during interrogation and which was to the effect that "if the man is alive, it will help if we find him", could not be construed as a promise of leniency made in order to obtain defendant's confession. When Detective Holt spoke again with defendant, defendant confessed to killing Ms. Gaines. Detective reread him his *Miranda* rights which defendant had previously signed and asked if he understood them. Defendant said he did. Detective Holt then asked defendant if he would tell him the facts again and this interrogation was recorded on a cassette recorder and subsequently transcribed. Defendant's contention here is based on his own testimony that the polygraph examiner promised defendant he would get hospital care and face a charge less than capital murder if he confessed. Defendant did not call on Officer Bright to testify or corroborate his version. Defendant's account, which the trial court was free to believe or disbelieve, of what the polygraph examiner told him was as follows:

A. He asked me if I ever had taken a polygraph examination before and I told him I had not and he said the way it works is, if I am telling the truth it could be used for me and if I am lying he couldn't admit it into Court and we never got over to how it actually worked. He started explaining to me about, in his experience as an officer, that any time a person is stabbed or shot, a number of times, that is needed to kill them, something is actually wrong with that person as in this instance, that person needs some type of help and that he would be willing to get that type of help for that person. He told me his record speaks for himself and he was a good officer and he would get Detective Holt to agree with that.

Q. Did he tell you that he was going to get you some help?

A. Yes, he did.

Q. Did he tell you that he thought there was something wrong with you?

A. Not me per se, indirectly, he said there was something wrong with the person.

We do not construe this as a promise of leniency or reduced charge in exchange for defendant's confession. Defendant himself admitted that the polygraph examiner spoke in only general terms. He further testified that on the next day when he was questioned by Detective Holt and a prosecuting attorney, he had admitted that no coercion had been used nor any promises made to him in exchange for his confession. At his arraignment, when questioned by the judge and the prosecutor, he again denied that coercion had been used or promises made.

Detective Holt testified he had made no promises to defendant and had told defendant it was up to the prosecuting attorney to determine the charge to be filed against him. That he told defendant that he thought it would probably be second degree murder, not capital murder, again is not a promise of a reduced charge. Holt testified he told defendant that when he applied for a warrant at the prosecutor's office, he would tell them that defendant wanted "help," i.e. a psychiatric examination. Again, this is not a promise of psychiatric hospitalization.

If there is any conflict with regard to the testimony regarding voluntariness, admission of the confession into evidence is a matter of discretion with deference being paid to the trial court's ruling on the credibility of the witness unless manifest error has been committed.

The trial court determined that the testimony of the state's witnesses was more credible than defendant's. The trial court made factual findings at the conclusion of the hearing since the evidence was conflicting. On the record, the conclusion of the trial judge that defendant's statements were voluntary is fully supported by the evidence. The state's evidence showed that defendant was informed of all his constitutional rights, that he was capable of understanding these rights and that no physical force, threats, promises or course of tactics were used to obtain the statements. *State v. Olinghouse,* 605 S.W.2d 58, 67 (Mo. banc 1980). Defendant acknowledged that he had dealt with police in the past and was familiar with court-ordered psychiatric examinations. Defendant was advised of his rights on at least four occasions and on each occasion indicated he understood his rights and that no threats or promises had been made to him to induce his confession. Defendant, in his mid-twenties, showed no lack of education or intelligence which might have clouded his understanding. We find no evidence of coercion. Consequently, we hold the trial court did not err in overruling defendant's motion to suppress his confession nor in overruling defendant's objection at trial to the admission of his taped confession. Judgment affirmed.

SNYDER, P.J., and JAMES K. PREWITT, Special Judge, concur.