Melvin POWELL, Appellee,

v.

Donald W. WYRICK, Appellant.

No. 83–2386.

United States Court of Appeals,
Eighth Circuit.

Submitted June 13, 1984.

Decided Sept. 26, 1984.

Rehearing and Rehearing En Banc
Denied Oct. 24, 1984.

Patrick Lysaught, Kansas City, Mo., for appellee.

John Ashcroft, Atty. Gen., Kelly Mescher, Asst. Atty. Gen., Jefferson City, Mo., for appellant.

Before ROSS, Circuit Judge, HENLEY, Senior Circuit Judge, and BOWMAN, Circuit Judge.

HENLEY, Senior Circuit Judge.

Donald W. Wyrick, warden of the Missouri State Penitentiary, appeals from the district court's order granting Melvin Powell's petition for habeas corpus relief pursuant to 28 U.S.C. § 2254 (1976). For the reasons discussed below, we reverse.

## I. PROCEDURAL HISTORY

Powell was convicted by a jury in Missouri circuit court of first degree robbery and sentenced to fifty-eight years imprisonment. The trial court reduced the term of imprisonment to forty years on Powell's post-trial motion for reduction of sentence. The conviction was affirmed on appeal, *State v. Powell*, 542 S.W.2d 588 (Mo.Ct.

App.1976), and Powell's Mo.Sup.Ct.R. 27.26 motion for post-conviction relief was denied. *Powell v. State,* 581 S.W.2d 37 (Mo. Ct.App.1979). When Powell sought federal habeas relief, the district court dismissed the habeas petition for failure to exhaust available state remedies. This court reversed that determination and remanded for a proceeding on the merits. *Powell v. Wyrick,* 657 F.2d 222 (8th Cir.1981).

On remand the district court referred the matter to a magistrate for an evidentiary hearing. The magistrate conducted two hearings and recommended that the writ issue. The district court conducted a de novo review and entered an order granting the writ of habeas corpus. This appeal followed.

## II. Facts

Powell was indicted for the March 13, 1975 robbery of a Kansas City A & P grocery store. James F. Speck, a state public defender, was appointed to represent Powell at trial. Powell was a Black Muslim who had difficulties in trusting and communicating with Speck, who was white. When Speck realized he was not making any progress with Powell, he asked Mark Bryant, a black public defender, to assist him. Powell told Bryant that he was dissatisfied with Speck for racial and religious reasons, and indicated that he wanted to represent himself. The record does not reveal that Powell was ever told he could have another attorney represent him. Powell also said that he felt Speck was more interested in having him enter a guilty plea than in going to trial.

The day before trial, Speck and Bryant met with Powell. Powell insisted on representing himself despite the attorneys' advice to the contrary. Before jury selection, the state trial court conducted an inquiry into Powell's request to represent himself at trial. The court and Speck questioned Powell to determine whether Powell's attempted waiver of his right to counsel was knowing and intelligent.

Powell testified that he was a high school graduate, was able to understand the proceedings against him, and was not under any physical or mental impairment. He stated that the previous day Speck and Bryant had spoken with him at length regarding the procedure employed in criminal trials, including jury selection, his right to confront witnesses and cross-examine them, closing argument, and the right to make objections. Speck informed Powell in open court that he would need to renew a pretrial objection to certain evidence of other crimes. Speck also emphasized Powell's right to testify on his own behalf and of his fifth amendment right not to testify if doing so would incriminate him. Speck warned Powell that if he testified, the prosecutor could ask him about other crimes he had committed. Speck informed him of the availability of limiting instructions on other crimes evidence.

During examination by the court, Powell revealed that he had previously observed five jury trials and had been informed by Speck of how a trial was conducted. Powell averred that no one had made any threats or promises to him or done anything else to cause him to choose to represent himself. Powell said that he did not intend to cross-examine any of the State's witnesses although he was aware of his right to do so. The court informed him that if he changed his mind at any time, the court would permit him to examine witnesses. Speck notified the court that he would turn over his trial preparation materials to Powell and agreed to sit at counsel's table with Powell throughout the trial in case Powell needed advice. Powell said that he understood this arrangement and would ask Speck for help if he needed it.

Powell claimed in both his Rule 27.26 motion and habeas petition that he was denied the right to counsel because his waiver of that right was not knowing and intelligent. The Missouri Court of Appeals rejected this contention, ruling as follows:

Appellant, in his second point, contends he did not validly waive his right to counsel. The record is replete with the conduct of the trial court, counsel and Appellant himself in establishing Appellant, from the very beginning of the proceedings, was aware of the difficulties and problems of self representation.

Hearing was had outside the presence of the jury with Appellant, counsel for Appellant and the prosecuting attorney, where Appellant has asked about his education and familiarity with court proceedings. During this initial hearing and during the entire trial, Appellant was urged to seek and utilize the advice of counsel. Appellant made the repeated choice to disregard the admonishment of the court and counsel and elected to represent himself. Counsel previously appointed for Appellant was requested to remain during the trial and did remain. Counsel previously appointed for Appellant filed motions during the trial on Appellant's behalf.

While the waiver of the right to counsel should ever be zealously safeguarded once it is clearly established by the actions of an accused that she or he is freely [sic] from any infirmity, duress, influence or any other determining factor brought to the court's attention which renders such waiver suspect, and the accused knew what he was doing, was made aware of the dangers and disadvantages and the choice was made with "eyes wide open," then an accused is free to act as his or her own counsel. *State v. Quinn*, 565 S.W.2d 665 (Mo.App. 1978).

As has been pointed out, both the trial court and previously appointed counsel repeatedly questioned and advised Appellant herein on the question of self representation, and both also provided guidance to Appellant throughout the trial.

The conduct of the court in this admittedly "ticklish situation" of self representation did nothing to violate the principles of *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), and further, the actions taken by the trial court in protection of Appellant's rights were well within the safeguards set forth in *State v. Gaye*, 532 S.W.2d 783 (Mo.App.1975) and *State v. Quinn, supra.*

*Powell v. State*, 581 S.W.2d at 38–39.

Contrary to the state courts, the district court concluded that Powell's waiver of his right to counsel was not knowing and intelligent because the state trial court did not ascertain on the record that Powell was aware, at the time he waived counsel, of the nature of the charge, the range of punishment, or the dangers of self-representation, as required by *Faretta v. California*, 422 U.S. 806, 835, 95 S.Ct. 2525, 2541, 45 L.Ed.2d 562 (1975); *Von Moltke v. Gillies*, 332 U.S. 708, 724, 68 S.Ct. 316, 323, 92 L.Ed. 309 (1948); *United States v. Aponte*, 591 F.2d 1247, 1250 (9th Cir.1978); and *United States v. Dujanovic*, 486 F.2d 182, 188 (9th Cir.1973). Therefore, the district court issued a writ of habeas corpus.

The State argues on appeal that the district court improperly shifted the burden of proving what Powell understood to the State. Moreover, the State contends that Powell failed to claim in his Rule 27.26 motion that he was not informed of the charges against him and the possible punishment, thus rendering his claim unexhausted for purposes of federal habeas corpus. *See Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982).

## III. DISCUSSION

■ As a preliminary matter, the State argues that Powell is attempting to raise claims he has not yet presented to the state courts in a Rule 27.26 proceeding. We disagree. Powell's brief to the Missouri Court of Appeals set forth his contention that his waiver of counsel was unintelligent because he had not been informed of the nature of the charges and potential punishment, and consequently did not comprehend what was at risk. Although the Missouri Court of Appeals did not specifically address this allegation in its written opinion, the issue was in fact presented. Therefore, Powell has exhausted his state remedies.

■ Proceeding to the merits, up to a point we may agree with the State that a habeas petitioner has the burden of proving the allegations of his petition. *See Wabasha v. Solem*, 694 F.2d 155, 159 n. 4 (8th Cir.1982); *Williford v. Estelle*, 672 F.2d 552, 555 (5th Cir.), *cert. denied*, 459

U.S. 856, 103 S.Ct. 124, 74 L.Ed.2d 108 (1982). Indeed a presumption exists that a defendant's lawyers or the court informed him of the charges. *Marshall v. Lonberger,* 459 U.S. 422, 437, 103 S.Ct. 843, 852–53, 74 L.Ed.2d 646 (1983). At the federal habeas corpus hearings, Powell admitted that the charges and applicable punishment had been disclosed to him during his arraignment. Moreover, the state courts found as a matter of fact that both the trial court and appointed counsel had fully advised Powell regarding self-representation. Federal habeas courts should accord state factual determinations a high measure of deference, *see Sumner v. Mata,* 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981), and should reject only those factual findings unsupported by the record as a whole. 28 U.S.C. § 2254(d)(8). The record amply supports the finding that Powell was warned on numerous occasions about the dangers of self-representation, but he nevertheless persisted in exercising his right to self-representation. The magistrate and the district court were unwilling to find that Powell understood what Speck told him because of communication problems. However, we cannot accept a conclusion that Powell may have misunderstood certain rights including the danger of self-representation. Whatever the lack of communication with Speck, the deficiency was supplied by Bryant who could and did repeatedly warn Powell about self-representation. There is no valid claim that Bryant and Powell could not or did not understand each other.

Finally, we mention the claim that Powell may not have understood that he might have had other counsel if he distrusted Speck and Bryant. While it is true that he could have asked for other counsel, Powell concedes on appeal that he had no right to other counsel, but only the privilege of asking. We observe that Powell had three different attorneys. Mr. Schwartz represented him at arraignment. Speck undertook the principal tasks and called in Bryant to assist. Both Speck and Bryant stayed with him as long as they were permitted to do so. Having had three attorneys, there is little reason to believe that Powell would have thought he could not have had a fourth or a fifth if necessary if any of his three attorneys had done anything to cause him to believe they could not or would not represent him fully and fairly.

Yet when asked by the state trial judge whether anyone had done anything to cause him to choose to represent himself he answered in the negative. The trial judge was justified in accepting Powell's answer.

In the factual circumstances of this case, we hold that Powell knowingly and intelligently waived his right to counsel in favor of representing himself and that there is no constitutional infirmity in his conviction.[1]

Accordingly, the judgment of the district court is reversed and remanded with directions that the petition be dismissed.

---

1. While the requirements of Fed.R.Crim.P. 11 are not applicable to state proceedings, we strongly urge state courts to consider developing the record fully along the lines of Rule 11 to ensure that the record reflects a criminal defendant's knowing and voluntary waiver of his constitutional rights. *See Wabasha v. Solem,* 694 F.2d at 159–61 (Lay, C.J., dissenting).