787 F.2d 310
 Burton Donald WOODS, III, Appellant,
v.
Bill ARMONTROUT, Acting Warden, Appellee.
 No. 84-2103.
 United States Court of Appeals,
Eighth Circuit.
 Submitted June 13, 1985.
Decided March 20, 1986.
Rehearing and Rehearing En Banc Denied May 27, 1986.
 
 Liane S. Binowitz, St. Louis, Mo., for appellant.
 George Cox, Asst. Atty. Gen., Jefferson City, Mo., for appellee.
 Before HEANEY and BOWMAN, Circuit Judges, FLOYD R. GIBSON, Senior Circuit Judge.
 BOWMAN, Circuit Judge.
 
 
 1
 This case arises from a habeas corpus petition challenging appellant Burton D. Woods, III's state court conviction for capital murder, for which he is now serving a sentence of life imprisonment without possibility of probation or parole for fifty years. Woods appealed his conviction to the Missouri Supreme Court, which transferred the appeal to the Missouri Court of Appeals. The court of appeals affirmed the conviction. State v. Woods, 662 S.W.2d 527 (Mo.App.1983). Woods then filed a petition for a writ of habeas corpus in the District Court[1] pursuant to 28 U.S.C. Sec. 2254(d). The District Court referred the petition to a magistrate who, after reviewing the record of the state court proceedings, recommended denying Woods's petition. The District Court, after reviewing the record, adopted the magistrate's recommendation and denied the petition without conducting an evidentiary hearing.
 
 
 2
 Woods challenges the denial of the writ on several grounds. First, he asserts that the pretrial hearing on the voluntariness of his confession failed to meet the requirements of Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), in violation of the Fifth and Fourteenth Amendments to the United States Constitution. Second, Woods contends that the District Court erred in finding that the confession was voluntary. Woods argues that the confession was involuntary because induced by promises of leniency. Finally, Woods claims that he was entitled to an evidentiary hearing in the District Court.[2]
 
 
 3
 We affirm the District Court's decision that the state court proceeding met the Jackson requirements, and that Woods's confession was voluntary. We also reject Woods's claim that the District Court was required to hold an evidentiary hearing on these issues.
 
 I.
 
 4
 On August 10, 1979, responding to a 3:00 a.m. prowler call from Kasandra Gaines, a police officer found Woods outside Gaines's apartment. Upon discovering that the "prowler" was Woods, a co-worker whom she recognized, Gaines admitted Woods to her apartment and the officer departed. Later that morning Gaines's mother found her dead, with eight stab wounds.
 
 
 5
 That afternoon the investigating officer, Detective Holt, talked with Woods, who agreed to accompany him to the police station for further questioning.[3] Holt interrogated Woods for approximately three hours, during which Woods denied killing Gaines. Woods then agreed to submit to a polygraph test. The examining officer, Sergeant Bright, spent ten minutes alone with Woods but did not administer the test. Woods claims that Bright implied that if he confessed Bright would be willing to get Woods help because Bright believed there was something mentally wrong with a person who stabbed someone repeatedly. The "help," according to Woods, was to consist of hospital care, and a charge less than capital murder. In addition, Woods contends that Bright said that Holt would agree to get Woods help. Bright then summoned Holt, stating that Woods wanted to speak with him. Woods immediately confessed to killing Gaines.
 
 
 6
 In a pretrial hearing on a motion to suppress Woods's confession, both Holt and Woods testified about their conversations. Woods asserted that the officers had promised him leniency if he confessed. While Holt denied promising leniency, he did say that he spoke with Woods about the possibility of medical treatment. Holt believes that this conversation occurred after Woods confessed. Moreover, Holt asserts that he never promised Woods that the charge would be less than capital murder. The record shows that Woods twice said that no coercion had been used or any promises made to him in exchange for his confession: once the day after the confession and again at his arraignment on charges of capital murder. Woods, 662 S.W.2d at 535. Moreover, neither the state nor Woods called Bright to testify about what he said to Woods. At the end of the hearing, the trial court found that Woods had received the proper warnings and had voluntarily and intelligently waived his rights. Although the trial court did not enter a specific finding as to whether the officers had promised leniency, it denied the motion to suppress and permitted the prosecution to introduce the confession at trial.
 
 II.
 
 7
 Woods's assertion that his confession was involuntary raises a constitutional claim under the Fifth and Fourteenth Amendments. See, e.g., Brady v. United States, 397 U.S. 742, 750, 755, 90 S.Ct. 1463, 1470, 1472, 25 L.Ed.2d 747 (1970); Jackson v. Denno, 378 U.S. 368, 385-86, 84 S.Ct. 1774, 1785-86, 12 L.Ed.2d 908 (1964). In addressing such claims, a district court must hold a hearing on a habeas corpus petition when relevant facts are either in dispute or insufficiently developed, and the state court did not hold a fair evidentiary hearing. Townsend v. Sain, 372 U.S. 293, 312-13, 83 S.Ct. 745, 756-57, 9 L.Ed.2d 770 (1963). Accord Beavers v. Lockhart, 755 F.2d 657, 661 (8th Cir.1985); Riley v. Lockhart, 726 F.2d 421, 423 (8th Cir.1984); Wallace v. Lockhart, 701 F.2d 719, 729-30 (8th Cir.1983); Lindner v. Wyrick, 644 F.2d 724, 729 (8th Cir.1981). Clearly, we are confronted here with a factual dispute--Woods claims the officers promised leniency while the state denies that the officers made such promises. Thus, we must decide whether the state court granted a fair evidentiary hearing. If the hearing was procedurally fair, then we must accord substantial deference to the state court's determination of the facts surrounding the voluntariness of Woods's confession. See Marshall v. Lonberger, 459 U.S. 422, 432, 103 S.Ct. 843, 849-50, 74 L.Ed.2d 646 (1983). As the Supreme Court recently held, although "the ultimate issue of 'voluntariness' is a legal question requiring independent federal determination," subsidiary factual questions are entitled to the 28 U.S.C. Sec. 2254(d) presumption of correctness. Miller v. Fenton, --- U.S. ----, 106 S.Ct. 445, 450, 88 L.Ed.2d 405 (1985).
 
 
 8
 The Supreme Court's description of the difficult task facing a trial court clearly shows why great deference is due the trial court's findings concerning the facts surrounding a confession:
 
 
 9
 [F]acts are frequently disputed, questions of credibility are often crucial, and inferences to be drawn from established facts are often determinative. The overall determination of the voluntariness of a confession has thus become an exceedingly sensitive task, one that requires facing the issue squarely, in illuminating isolation and unbeclouded by other issues and the effect of extraneous but prejudicial evidence.
 
 
 10
 Jackson v. Denno, 378 U.S. at 390, 84 S.Ct. at 1788. A federal court must more than simply disagree with a state court before rejecting its factual determination. Rather, a federal court must conclude that a state court's findings lack "even 'fair support' in the record." Id.; Powell v. Wyrick, 744 F.2d 632, 635 (8th Cir.1984). Particularly important here, the federal statute governing habeas corpus actions by state prisoners directs federal courts to presume that state court determinations are correct unless one of eight exceptions applies. 28 U.S.C. Sec. 2254(d).
 
 
 11
 Woods asserts that the state court hearing failed to develop adequately the facts concerning the voluntariness of his confession. According to Woods, the omission of Bright's testimony about the ten minutes they were alone together left a gap in the evidentiary record. Woods claims that this omission falls within the third exception in 28 U.S.C. Sec. 2254(d), "that the material facts were not adequately developed at the state court hearing...." Woods thus argues that the District Court should have conducted an evidentiary hearing to determine whether Bright promised leniency. We disagree.
 
 
 12
 In Jackson v. Denno, the Supreme Court set the standard for determining whether a state court hearing was fair. A defendant moving to suppress a confession is entitled to a fair hearing on the underlying factual issues and the voluntariness of the confession. 378 U.S. at 380, 84 S.Ct. at 1782. The trial court's procedures must "be fully adequate to insure a reliable and clear-cut determination of the voluntariness of the confession, including the resolution of disputed facts upon which the voluntariness issue may depend." Id. at 391, 84 S.Ct. at 1788 (footnote omitted).
 
 
 13
 Before Woods's trial, the court conducted a hearing on the voluntariness of Woods's confession. The state had the burden of showing that Woods's confession was voluntary, Miranda, 384 U.S. at 475, 86 S.Ct. at 1628, by a preponderance of the evidence. Lego v. Twomey, 404 U.S. 477, 484, 92 S.Ct. 619, 624, 30 L.Ed.2d 618 (1972); State v. Hughes, 596 S.W.2d 723, 726 (Mo.1980). The court gave both the state and Woods the opportunity to present evidence and to cross-examine the other party's witnesses. Holt testified that he made no promises of leniency to Woods, though he did discuss medical treatment with Woods.[4] Bright did not testify for either party, though both had the opportunity to call him. Woods testified that Bright promised medical care and a charge less than capital murder. After hearing all the evidence, the trial court denied the motion to suppress the confession, concluding that Woods voluntarily and intelligently waived his rights.
 
 
 14
 On direct appeal, the Missouri Court of Appeals reviewed the trial court's decision under the standard of " 'whether the evidence was sufficient to sustain the trial court's finding that the statement was voluntarily given.' " Woods, 662 S.W.2d at 533 (citation omitted). The appeals court looked at Woods's age, experience, and intelligence as well as all the other circumstances surrounding the confession. The court also reviewed the suppression hearing testimony. The court mentioned two facts that tended to undermine Woods's contentions. First, after the confession Woods twice admitted that the officers had not coerced him into making the confession and had not made any promises to him. Id. at 535. Second, Woods did not call Bright to testify at trial. Id. at 534. The court added that Woods was familiar with police procedure, was in his mid-twenties, and was not educationally or intellectually impaired. Id. at 535. The court of appeals upheld the trial court's decision.
 
 
 15
 Denied relief in state court, Woods then filed a petition for habeas corpus in federal district court. After reviewing the record, Woods's petition, and the magistrate's report and recommendation, the District Court concluded that the suppression hearing adequately developed the facts concerning the voluntariness of Woods's confession and that the state procedures had met the Jackson v. Denno requirements. In reaching its decision, the District Court relied on the magistrate's findings, which were based on a review of the state court record, including the pretrial suppression hearing. As a result, we avoid the problem of O'Blasney v. Solem, where the district court, unassisted by a magistrate's report and recommendation, deferred to the state court without examining the record to verify that there was factual and legal support for the state court's decision. 774 F.2d 925, 927 (8th Cir.1985) (petitioner claimed the evidence at trial was not sufficient to justify the jury's verdict). Moreover, based upon our review of the record, we agree with the District Court's conclusion that the state court proceedings were fair and that they gave Woods a reliable and clear-cut determination of the voluntariness of his confession, as required by Jackson v. Denno. We further agree with the District Court's conclusion that the state court's determination of voluntariness has ample support in the record. Therefore, the District Court was well within its discretion in denying Woods's petition for a writ of habeas corpus without conducting an evidentiary hearing.
 
 
 16
 The Supreme Court recently decided a case concerning the impact of 28 U.S.C. Sec. 2254(d) on federal court review of voluntariness findings. Miller v. Fenton, --- U.S. ----, 106 S.Ct. 445, 88 L.Ed.2d 405 (1985). The Miller case involved a Third Circuit ruling that a state court's finding concerning the voluntariness of a confession was entitled to the section 2254(d) presumption of correctness. Id. The Supreme Court reversed, holding that the ultimate issue of voluntariness is a legal question requiring an independent federal determination. Id. 106 S.Ct. at 449-51. The Court carefully noted, however, that subsidiary factual questions are entitled to the section 2254(d) presumption, and that on the ultimate issue of voluntariness a federal habeas court "should, of course, give great weight to the considered conclusions of a coequal state judiciary." Id. at 451. The Court emphasized that when "the issue involves the credibility of witnesses and therefore turns largely on an evaluation of demeanor, there are compelling and familiar justifications for leaving the process of applying law to fact to the trial court and according its determinations presumptive weight." Id. at 452. State court findings on questions requiring the resolution of conflicting testimony of police officers and the defendant are "conclusive on the habeas court if fairly supported in the record and if the other circumstances enumerated in Sec. 2254(d) are inapplicable." Id.
 
 
 17
 In the present case, both the magistrate and the District Court reviewed the state court record and did not apply a presumption of correctness devoid of reference to the circumstances of the confession. Having concluded that the hearing was procedurally fair--and thus that the section 2254 exceptions did not apply--the magistrate and District Court appropriately made an independent determination that Woods's confession was voluntary. While deferring to the state court's factual findings, the District Court independently reached its own conclusions of law.
 
 
 18
 Woods had a fair opportunity to present evidence and testimony at the suppression hearing, including Bright's testimony. Woods does not allege that the state made Bright unavailable or maliciously withheld his testimony. Woods asserts, however, that he is entitled to the benefit of the presumption that a witness particularly available to the state, whom the state did not call to testify, would testify favorably for the defense. United States v. Thomas, 223 F.Supp. 958, 959-60 (E.D.Mo.1963). We find this argument to be without substance. Woods as well as the state could have called Bright as a witness. There is no reason to think that Woods's attorneys would not have called Bright as a witness at the suppression hearing if they had believed his testimony would be favorable to their client. Since Woods had no evidence, other than his own testimony, to support his version of the events leading up to his confession, his failure to call Bright as a witness is an especially glaring omission.
 
 
 19
 Woods also argues that the state trial court failed to resolve the merits of the factual dispute because the court did not expressly find that the officers did not promise leniency in charge and treatment. We do not find this argument persuasive. In Sims v. Georgia, the Supreme Court held that a trial court need not make formal findings of fact as long as the court's conclusion about voluntariness appears with unmistakable clarity in the record. 385 U.S. 538, 544, 87 S.Ct. 639, 643, 17 L.Ed.2d 593 (1967). In United States ex rel. Placek v. Illinois, 546 F.2d 1298 (7th Cir. 1976), the court dealt with a state trial court's decision that the defendant's incriminating statements were " 'clearly voluntary' and not 'coerced in any way or encouraged in any way by a police officer.' " Id. at 1306. The Seventh Circuit noted that "[t]he court's voluntariness finding thus appears in the record with 'unmistakable clarity,' and implicit in the court's ruling is a finding that no promises of leniency were ever made." Id. The same conclusion applies to the instant case. The trial court's failure to make a specific finding as to whether the police officers promised leniency or medical treatment does not undo the trial court's conclusion. Rather, implicit in the trial court's determination that Woods made his confession voluntarily is a finding that the police officers did not induce the confession by either coercion or promises.
 
 III.
 
 20
 For the reasons discussed above, we affirm the judgment of the District Court.
 
 
 21
 HEANEY, Circuit Judge, dissenting.
 
 
 22
 I respectfully dissent.
 
 
 23
 Because there are disputed facts which were not resolved at the state court trial, Burton Donald Woods has not received "a reliable and clearcut determination of the voluntariness of [his] confession" as required by Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). See id. at 391, 84 S.Ct. at 1788. In the pretrial hearing on defendant's motion to suppress, Woods testified that Sergeant Edward Bright promised to get Woods psychiatric help and a reduced charge in return for Woods's confession. Although Woods and Bright were alone in the polygraph room when the alleged exchange took place, the state failed to call Bright as a witness to contradict Woods's testimony.[1] This Court has held that where the state omits the testimony of a police officer who overheard the preconfession conversation at which a promise of leniency was allegedly made, an additional evidentiary hearing on the voluntariness of the confession is mandatory. See Hunter v. Swenson, 442 F.2d 625 (8th Cir.1971). This is the case even though the state introduces the testimony of the police officer who actually took part in the conversation.
 
 
 24
 The appellees argue that "[e]ven appellant's own testimony does not support a reasonable theory that promises were made."[2] Brief of Appellees at 11. This argument is without foundation. On direct examination, Woods described his conversation with Bright:
 
 
 25
 Q When you went in to talk to Sergeant Bright what did he tell you?
 
 
 26
 A He asked me if I ever had taken a polygraph examination before and I told him I had not and he said the way it works is, if I am telling the truth it could be used for me and if I am lying he couldn't admit it into Court and we never got over to how it actually worked. He started explaining to me about, in his experience as an officer, that any time a person is stabbed or shot, a number of times, that is needed to kill them, something is actually wrong with that person as in this instance, that person needs some type of help and that he would be willing to get that type of help for that person. He told me his record speaks for himself and he was a good officer and he would get Detective Holt to agree with that.
 
 
 27
 Q Did he tell you that he was going to get you some help?
 
 
 28
 A Yes, he did.
 
 
 29
 Q Did he tell you that he thought there was something wrong with you?
 
 
 30
 A Not me per se, indirectly, he said that was something wrong with the person.
 
 
 31
 Q And he told you that he was going to work with Detective Holt to get you some help?
 
 
 32
 A Right.
 
 
 33
 Q Did you believe that was the situation?
 
 
 34
 A Yes, I did.
 
 
 35
 Q Did you rely on what Sergeant Bright was telling you?
 
 
 36
 A Yes.
 
 
 37
 Tr. at 70.
 
 
 38
 It is irrelevant that Bright's promises could be considered indirect. "To be admissible, a confession * * * must not be * * * obtained by any direct or implied promises, however slight[.]" Brady v. United States, 397 U.S. 742, 753, 90 S.Ct. 1463, 1471, 25 L.Ed.2d 747 (1970) (quoting Bram v. United States, 168 U.S. 532, 542-43, 18 S.Ct. 183, 186-87, 42 L.Ed. 568 (1897)). The Supreme Court has stated that where a defendant confesses while "in custody, alone and unrepresented by counsel * * *, even a mild promise of leniency [is] deemed sufficient to bar the confession, not because the promise [is] an illegal act as such, but because defendants at such times are too sensitive to inducement and the possible impact on them too great to ignore and too difficult to assess." See Brady, 397 U.S. at 754, 90 S.Ct. at 1472 (discussing Bram ). This was the situation in which Woods found himself. The fact that he took such pains to tell precisely what was said reinforces his credibility.[3] Although the impact on Woods of Bright's statements is arguably unclear, it was thrown into sharp focus during his cross-examination when the following exchange took place between Gordon Ankney, the Assistant Prosecuting Attorney, and Woods:
 
 
 39
 Q So the only promise that was made to you that induced you to make this statement is that one of the police officers, Detective Bright, said that you would be hospitalized?
 
 
 40
 A That and the reduced charge was mentioned, yes, Sir.
 
 
 41
 Tr. at 82.
 
 
 42
 Even if we were to concede that Woods received a reliable determination of the voluntariness of his confession at the state court level, we would still have to remand because the federal district court applied the wrong standard of review to the state court decision. The Supreme Court has recently held that a state court determination of the voluntariness of a confession is not entitled to the 28 U.S.C. Sec. 2254(d) presumption of correctness. See Miller v. Fenton, --- U.S. ----, 106 S.Ct. 445, 88 L.Ed.2d 405 (1985). It stated that "the ultimate question whether, under the totality of the circumstances, the challenged confession was obtained in a manner compatible with the requirements of the Constitution is a matter for independent federal determination." Id. at ----, 106 S.Ct. at 451, 88 L.Ed.2d at 412. It is clear that the district court erroneously applied the section 2254(d) presumption to the state court's finding of voluntariness. The district court found "that there was sufficient evidence to support the trial court's finding that the confession was voluntary." Order and Memorandum at 2. It also adopted the magistrate's Report and Recommendation which stated:
 
 
 43
 Under 28 U.S.C. Sec. 2254(d) state court findings are presumed to be correct * * *.
 
 
 44
 In this habeas action, petitioner has not established any deficiency in the state court factfinding procedures. Therefore, we must presume that state court findings were correct. 28 U.S.C. Sec. 2254(d)(8); Jackson v. Wyrick, F.2d [1177, 1178], No. 83-1716, slip op. at 2 (8th Cir. March 29, 1984). The facts determined in the suppression hearing are fairly supported by the record.
 
 
 45
 Report and Recommendation of United States Magistrate at 10-11.
 
 
 46
 Similarly, the majority of this Court found that the state court's determination had "ample support in the record." This, however, is not the correct standard of review for determinations of voluntariness, but is, rather, the standard of review for state court findings of fact. See 28 U.S.C. Sec. 2254(d).
 
 
 47
 Although, as the majority points out, the Miller Court stated that when "the issue involves the credibility of witnesses and therefore turns largely on an evaluation of demeanor, there are compelling and familiar justifications for leaving the process of applying law to fact to the trial court and according its determinations presumptive weight," Miller, --- U.S. at ----, 106 S.Ct. at 452, 88 L.Ed.2d at 413-14, it emphasized that this was not the case in determinations of voluntariness. Id. at ----, 106 S.Ct. at 453-54, 88 L.Ed.2d at 414-15. It stated that
 
 
 48
 practical considerations that have led us to find other issues within the scope of the Sec. 2254(d) presumption are absent in the confession context. First, unlike the impartiality of a given juror, or competency to stand trial, assessments of credibility and demeanor are not crucial to the proper resolution of the ultimate issue of "voluntariness.".... [T]he state court judge is not in an appreciably better position than the federal habeas court to make that determination.
 
 
 49
 * * * [T]he allocation of a guilty plea, the adjudication of competency to stand trial, and the determination of juror bias, take place in open court on a full record. In marked contrast, the critical events surrounding the taking of a confession almost invariably occur in a secret and inherently more coercive environment. These circumstances, * * * together with the inevitable and understandable reluctance to exclude an otherwise reliable admission of guilt, * * * elevate the risk that erroneous resolution of the voluntariness question might inadvertently frustrate the protection of the federal right.
 
 
 50
 Id. at ----, 106 S.Ct. at 453-54, 88 L.Ed.2d at 415 (citations omitted).
 
 
 51
 The proceedings here did not adequately protect Woods's federal right. Therefore, this case should be remanded to the state court for a full hearing on the voluntariness issue, at which hearing the state should call Bright as a witness. Thereafter, if the state fails to set the confession aside, Woods would be entitled to a full and independent review on the record in a federal habeas corpus proceeding.
 
 
 
 [1]
 The Honorable John F. Nangle, United States District Judge for the Eastern District of Missouri
 
 
 [2]
 Woods also claimed that the state failed to establish that the interrogating police officers had informed Woods of his constitutional rights at all stages of the interrogation--a challenge to the sufficiency of the warnings required by Miranda v. Arizona, 384 U.S. 436, 479, 86 S.Ct. 1602, 1630, 16 L.Ed.2d 694 (1966). Initially, during oral argument, we determined that Woods had not exhausted the available state remedies concerning the adequacy of the Miranda warnings. The Court directed Woods to decide whether to waive the Miranda issue and proceed with the appeal, or retain that issue and face dismissal under Rose v. Lundy, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982) (holding that a federal court must dismiss habeas petitions by state prisoners which contain both exhausted and unexhausted claims). By a letter dated June 14, 1985, Woods' counsel informed the Court that Woods was waiving the Miranda issue
 
 
 [3]
 At various points in the interrogations, the police officers informed appellant of all or part of the warnings required under Miranda, 384 U.S. at 479, 86 S.Ct. at 1630. As previously noted, we do not address the sufficiency of the warnings in this case
 
 
 [4]
 The medical treatment apparently would have been for some supposed mental aberration that caused Woods to stab Gaines. The record does not suggest, and Woods does not claim, that he was in any way physically or mentally impaired at the time of his interrogation
 
 
 [1]
 We may assume that since the state did not call Bright as a witness, Bright's testimony would have been favorable to Woods. See Sims v. Georgia, 389 U.S. 404, 406, 88 S.Ct. 523, 525, 19 L.Ed.2d 634 (1967)
 
 
 [2]
 The Missouri Court of Appeals stated: "We cannot see that defendant's testimony indicates any promises were made to him that he would receive a lesser charge or better treatment for his mental problems if he would confess." State v. Woods, 662 S.W.2d 527, 534 (Mo.App.1983)
 
 
 [3]
 Woods's claim that he was induced is especially credible given the circumstances. Woods had consistently maintained his innocence in the face of four hours of questioning by various officers, yet he confessed within ten minutes of entering a closed room with Bright