STATE of Missouri,
Plaintiff-Respondent,

v.

Stephen Dale GOODE,
Defendant-Appellant.

No. 51313.

Missouri Court of Appeals,
Eastern District,
Division One.

Dec. 16, 1986.

Mary Dames Fox, Asst. Public Defender, Clayton, for defendant-appellant.

William L. Webster, Atty. Gen., Elizabeth A. Levin, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

KELLY, Judge.

Stephen Dale Goode was convicted by a jury of robbery in the second degree; § 569.030 RSMo 1978. The trial court entered judgment on the verdict and sentenced appellant as a persistent offender to a term of thirty years imprisonment. He appealed.

At trial appellant sought removal of venireperson Bolasina for cause on the grounds of her alleged stated inability to give appellant a fair trial if she did not hear him testify. He also raised this issue in his motion for new trial. On appeal, however, appellant argues venireperson Bolasina's alleged inability to give appellant a fair trial because she would consider the appellant's prior convictions to determine his guilt or innocence, rather than to determine his credibility.

We note that appellant's basis for error in his motion for new trial is not the same ground argued here on appeal, and, therefore, the question has not been preserved for appellate review. Rule 29.11(d). Hence, the issue is reviewable only for plain error. Rule 29.12(b). *State v. Harris*, 620 S.W.2d 349, 354[7] (Mo. banc 1981). An appellate court will reverse under the plain error rule only if appellant makes a sound, substantial manifestation and a

strong, clear showing that injustice or a miscarriage of justice will result from the alleged error. *State v. Cannady,* 660 S.W.2d 33, 37[7] (Mo.App.1983). We find no minifest injustice or miscarriage of justice in this case.

■ The following excerpts from the voir dire examination provide the basis for appellant's claim:

MRS. FOX, ASSISTANT PUBLIC DEFENDER: "Is there anyone who feels that they could not presume Steve to be innocent and return a verdict of not guilty unless they heard him testify, that they would have to hear his side of the story? Anyone on this side have any problems with that? Anyone over here? Okay. I take it by your silence then that you all understand that."

"Steve is concerned because he has been previously convicted of crimes, that if he chooses to testify, that no one would give any credence whatsoever to what he has to say. Is there anyone who feels that he's right in feeling that way, that they would not listen to anything he says and would not believe him simply because he has prior convictions? Does anyone on this side feel that way? ..."

"Is there anyone who feels that he's correct in assuming that it would be very difficult for you to believe him if he did testify and tell you about his prior convictions? You look concerned, Mrs.—is it Bolasina?"

VENIREPERSON BOLASINA: "I'm afraid that people might have—there may be a doubt in their mind, yes, if he offered other testimony, stated that he did commit crimes and now he's telling people that he didn't."

MRS. FOX: "Would that concern you?"

VENIREPERSON BOLASINA: "Yes, it would."

MRS. FOX: "Would you be able to evaluate his testimony as to what he said and consider those previous convictions simply as to his credibility and not refuse to determine whether or not he committed this crime?"

VENIREPERSON BOLASINA: "I think I could yes. I think I could evaluate that, yes."

MRS. FOX: "You think you might have difficulty with that?"

VENIREPERSON BOLASINA: "Perhaps."

MRS. FOX: "Unfortunately I sort of have to ask you to tell us one way. Do you think you could or couldn't?"

VENIREPERSON BOLASINA: "My thinking is that he does not want—He does not want to get on the witness—He does not want to tell the people that he's innocent of third crime when he's committed other crimes, and he doesn't believe that the people will believe him. Is that correct? Is that what you are telling me?"

MRS. FOX: "I'm asking you if you feel that that is how you feel. Do you feel that if he testified and tells you that he has previous convictions that you would automatically assume he did this crime and find him guilty of this crime?"

VENIREPERSON BOLASINA: "I think I'd have a hard time with that."

MRS. FOX: "Okay."

VENIREPERSON BOLASINA: "I really do."

MRS. FOX: "You would have a hard time using those previous convictions just to determine his credibility?"

VENIREPERSON BOLASINA: "That's right."

MRS. FOX: "You might use them to determine whether or not he's guilty of this case."

VENIREPERSON BOLASINA: "Yes."

\* \* \* \* \* \*

THE COURT: "Are there any motions to strike for cause?"

\* \* \* \* \* \*

MRS. FOX: "I make a motion on juror No. 19, Sylvia Bolasina, based upon her statement that she would have difficulty giving the defendant a fair trial if she did not hear him testify."

THE COURT: "I believe her answer was, she could be fair and impartial and

would not hold defendant's silence against him, so that motion will be denied."

The transcript further reveals that appellant exercised his peremptory challenge to remove Ms. Bolasina from the jury panel.

Although venireperson Bolasina initially indicated that she would have difficulty considering appellant's prior convictions, she did state that she could evaluate his testimony and consider his previous convictions simply as to his credibility. Venireperson Bolasina *never* indicated that she would automatically find appellant guilty. It is not clear whether venireperson Bolasina would disregard a court which instructs her that "you must not consider such previous convictions as any evidence that the defendant is guilty of any offense for which he is now on trial." (jury instruction no. 5).

In *State v. Smith*, 649 S.W.2d 417, 422 [6, 7] (Mo. banc 1983), the Supreme Court of Missouri stated the criteria used to determine whether a challenge for cause should be sustained.

A clear line cannot be drawn for all cases as to when a challenge for cause should be sustained; there will be instances in which an appellate court might have done differently but cannot say there was an abuse of discretion; each case must be judged on its particular facts; a determination by the trial judge of the qualifications of a prospective juror necessarily involves a judgment based on observation of his demeanor and, considering that observation, an evaluation and interpretation of the answers as they relate to whether the venireman would be fair and impartial if chosen as a juror. *State v. Cuckovich*, 485 S.W.2d 16, 22–23[11] (Mo. banc 1972). Because the trial judge is better positioned to make that determination than are we from the cold record, doubts as to the trial court's findings will be resolved in its favor. *State v. Engleman*, 634 S.W.2d 466, 472[6] (Mo. banc 1982).

*State v. Smith*, 649 S.W.2d 417, 422[6, 7] (Mo. banc 1983), *cert. denied*, 464 U.S. 908, 104 S.Ct. 262, 78 L.Ed.2d 246 (1983). In *State v. Smith, supra*, the Supreme Court of Missouri applied the plain error rule, as the appellant had failed to preserve his claim of error at trial. Appellant sought removal of venireperson Kraft for cause, because Kraft had a daughter who was raped at the same age at which the victim was murdered. Venireperson Kraft indicated he needed to think about whether the past experience involving his daughter would affect his ability to be fair and impartial. After he was given an opportunity to reflect on whether he was capable of fairly judging the case or whether he would presume the defendant was guilty, Mr. Kraft remained silent. The court in *Smith* held, "[w]e do not find that manifest injustice or miscarriage of justice resulted from the trial court's failure to question venireman Kraft further or strike him for cause."

Analogous to the case at bar, venireperson Kraft did not sit on the jury that ultimately convicted the defendant. Both venirepersons Kraft's and Bolasina's alleged prejudices were not exposed to the other jurors during the deliberations which resulted in a conviction.

In *State v. Woods*, 662 S.W.2d 527 (Mo. App.1983), defendant sought removal of venireperson Uzzle for cause on the grounds of his stated inability to consider the defense of intoxication. On appeal, he argued that Uzzle's inability to weigh impartially an insanity defense provided cause for his disqualification. Since the issue on appeal was not preserved, the Missouri Court of Appeals applied the plain error rule. Venireperson Uzzle *did* serve on the jury. The court stated that Uzzle did indicate some skepticism regarding the believability of testimony of psychiatrists concerning mental disease or defect. However, the court found that at no time did he indicate he would be unable to be fair to defendant. Thus, the court held that the inclusion of Uzzle on the jury panel did not amount to a manifest injustice.

In the case at bar, we do not find a miscarriage of justice where venireperson

Bolasina expressed that she would evaluate appellant's testimony, and further indicated that she would not automatically presume the appellant was guilty.

 Furthermore, in the instant case, the plain error doctrine does not have to be invoked to determine whether the trial court erred in refusing to strike venireperson Bolasina for cause, since the evidence of appellant's guilt of the robbery was overwhelming. *State v. McCain*, 662 S.W.2d 864, 865[1] (Mo.App.1983).

At trial, William Wright, a cab driver for the St. Louis County Cab Company, testified that he received a radio dispatch to pick up appellant at a tavern in St. Louis County. When Wright arrived in the cab, appellant approached the cab and told Wright he wanted to go to Eureka, Missouri. Appellant directed Wright into a residential area. According to the record, Wright testified that appellant put his arms around Wright's neck, placed a large metallic knife behind Wright's right ear, and told Wright to give him Wright's money or he'd cut Wright's throat. Wright then gave appellant approximately $40.00. Appellant continued to hold the knife against Wright's throat, and he instructed Wright to continue to drive the cab.

Wright was then able to grab appellant's wrist and pull the knife away from his throat. Appellant quickly released his grip on Wright's arm, and jumped out of the cab. Wright drove across the parking lot and hit appellant. Wright stopped the cab, observed appellant lying in a pool of blood, and observed dollar bills floating across the lot. Wright then reported to the dispatcher that someone had robbed him and that Wright had disabled the robber. The police arrived shortly thereafter, and observed the dollar bills scattered on the lot.

 When guilt is established by overwhelming evidence, no injustice or miscarriage of justice will result from a refusal to invoke the plain error rule. *State v. Hubbard*, 659 S.W.2d 551, 556[5] (Mo.App. 1983). Furthermore, the appellant bears the burden of proving that the alleged error amounted to manifest injustice. *State v. Berry*, 609 S.W.2d 948, 953[14] (Mo. banc 1980). "A defendant must not only show that prejudicial error resulted, he must further show that the error so substantially affects his rights that manifest injustice or a miscarriage of justice will inexorably result if left uncorrected." *State v. Hubbard*, 659 S.W.2d 551, 556[7] (Mo.App. 1983).

We find that overwhelming evidence established the appellant's guilt, and if any prejudice did in fact result from the trial court's failure to strike venireperson Bolasina, appellant has clearly failed to meet his burden of showing that it rose to the level of manifest injustice or miscarriage of justice required by the plain error rule.

The judgment of the trial court is affirmed.

SATZ, P.J., and CRIST, J., concur.