

# In the Missouri Court of Appeals
# Eastern District

<u>DIVISION TWO</u>

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED110825 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of the City of St. Louis |
| v. | ) | Cause No. 1822-CR03700-01 |
| | ) | |
| MARCUS H. AUSLER, | ) | Honorable Timothy J. Boyer |
| | ) | |
| Appellant. | ) | Filed: June 18, 2024 |

**Introduction**

Appellant Marcus H. Ausler appeals the circuit court's conviction for first-degree murder, alleging that the circuit court: (1) plainly erred by failing to include in the jury instructions for first-degree murder a request for a finding that Appellant was at least 18 years old at the time of the alleged offense; (2) plainly erred by not *sua sponte* dismissing the indictment because Appellant's trial was not timely held; and (3) erred in sentencing Appellant to life without the possibility of parole because the State did not establish beyond a reasonable doubt that Appellant was at least 18 years old at the time of the offense. Because (1) the jury was not required to find that Appellant was at least 18 years old to convict him of first-degree murder; (2) Appellant's right to a speedy trial was not violated; and (3) Appellant's claim of plain error does not facially establish substantial grounds for believing that manifest injustice or a miscarriage of justice

1

occurred, we affirm the judgment.

## Factual and Procedural Background

We review the evidence in the light most favorable to the verdict. *State v. Stewart*, 560 S.W.3d 531, 532-33 (Mo. banc 2018). The following facts were adduced at trial:

Appellant and Mother were living together with Victim's son. Victim and his sister arrived at Appellant's and Mother's home to bring his son a birthday present. While inside, Victim and Mother began arguing about their son's cell phone usage, and Appellant walked out of the apartment, remaining within earshot of the nearby open backdoor. Appellant said something to Mother or Victim, Victim responded that the argument had nothing to do with Appellant, and Appellant left the premises. Victim and his sister then walked towards their vehicle to leave. While standing in front of their vehicle, Appellant shot Victim multiple times, ran towards an alley, and then returned to shoot him again before fleeing.

Victim's sister took Victim to the hospital where he was pronounced dead. At the hospital, Victim's sister showed the police Appellant's social media profile. She later identified Appellant from a photographic lineup, leading to the issuance of a warrant and Appellant's subsequent arrest.

The State filed a formal complaint against Appellant on October 24, 2018, charging him with first-degree murder, armed criminal action, and unlawful possession of a firearm for the April 6, 2018 killing of Victim. On that same day, Appellant was arrested, and the cause was set for a trial date of November 29, 2018. On November 29, 2018, the cause was continued to January 22, 2019, prior to the probable cause hearing, at the State's request and over Appellant's objection. The grand jury issued an indictment on January 22, 2019, and the court on the same day issued a final warrant. The indictment included Appellant's age and social security number, among other identifying details. After the cause was again continued to January 28, 2019, Appellant waived the

2

reading of the indictment, attested to having received the same, and entered a plea of not guilty. The court set the cause for trial on March 11, 2019.

As is discussed more in Point II, this cause was continued several times. After the grand jury indictment was filed, the initial judicial division entered continuances four times: on February 27, 2019, April 10, 2019, June 19, 2019, and July 31, 2019. The cause was then transferred from one judge to a different judicial division on September 27, 2019. The court set the cause for a February 3, 2020 trial, later resetting it for a March 23, 2020 trial. Proceedings were interrupted by the COVID-19 pandemic, and the trial was not held until May 23, 2022, with several continuances and status updates in the interim. Appellant filed his speedy trial request on October 6, 2020.

On May 25, 2022, a jury found Appellant guilty of first-degree murder, armed criminal action, and unlawful use of a weapon. On July 22, 2022, the circuit court sentenced Appellant to concurrent terms of life imprisonment without the possibility of parole for murder, 30 years for armed criminal action, and seven years for unlawful use of a weapon. Appellant appeals.

Additional facts are set out in the discussion where relevant to avoid repetition.

**Standard of Review**

This Court does not generally review unpreserved claims of error. *State v. Brandolese*, 601 S.W.3d 519, 526 (Mo. banc 2020). Rule 30.20[1] provides an exception allowing that "plain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." *Id*. (quoting Rule 30.20). Rule 30.20 makes clear that plain error review is a discretionary, two-step process. *See State v. Minor*, 648 S.W.3d 721, 731 (Mo. banc 2022). The first step is to determine whether the claim of

---

[1] All Rule references are to the Missouri Supreme Court Rules (2022), unless otherwise indicated.

3

error facially establishes substantial grounds for believing that manifest injustice or miscarriage of justice has resulted. *Brandolese*, 601 S.W.3d at 526 (citing *State v. Baumruk*, 280 S.W.3d 600, 607 (Mo. banc 2009)). Plain errors are those that are evident, obvious, and clear. *Id*. In the absence of such a determination, an appellate court should decline to review for plain error. *See Brandolese*, 601 S.W.3d at 526. If plain error is found on the face of the claim, then the Court may proceed to the second step to determine whether the claimed error resulted in manifest injustice or miscarriage of justice. *See Baumruk*, 280 S.W.3d at 607. To obtain a new trial on direct appeal based on a claim of plain error, the appellant must show that the error was outcome determinative. *State v. Wood*, 580 S.W.3d 566, 579 (Mo. banc 2019).

## Point I

In his first point, Appellant alleges that the circuit court plainly erred in submitting the verdict director for first-degree murder ("Instruction No. 5") to the jury without including an additional element "that defendant was eighteen years of age or older at the time of the offense," and requests reversal and remand for a new trial. Appellant concedes failing to preserve the issue for appellate review and instead requests plain error review.[2]

"Instructional error seldom rises to the level of plain error." *State v. Weyant*, 598 S.W.3d 675, 678 (Mo. App. W.D. 2020). "[R]eversal is only warranted when the instructional error is so prejudicial that it deprived the defendant of a fair trial." *State v. Nash*, 339 S.W.3d 500, 511-12 (Mo. banc 2011) (quoting *State v. Anderson*, 306 S.W.3d 529, 534 (Mo. banc 2010)). "Prejudice occurs when an erroneous instruction may have influenced the jury adversely." *State v. Zetina-*

---

[2] The State invites us to consider whether, because Appellant affirmatively indicated that he did not have an objection to Instruction No. 5, he has waived plain error review. While policy justifications and judicial economy may support such a rule in some circumstances, "[u]nless and until the Supreme Court re-evaluates the availability of plain error review of jury instructions in a criminal case, particularly where the defendant has affirmatively expressed no objection to the instructions at trial or has tendered a similarly defective instruction, we are without authority to conclude that plain error review has been waived." *State v. Coyle*, 671 S.W.3d 702, 712 (Mo. App. W.D. 2023) (citing *State v. Wurtzberger*, 40 S.W.3d 893, 897-88 (Mo. banc 2001)).

4

*Torres*, 482 S.W.3d 801, 810 (Mo. banc 2016) (quoting *State v. Belton*, 153 S.W.3d 307, 310 (Mo. banc 2005)). However, there is no prejudice if the instruction is an accurate statement of the law. *State v. Avery*, 275 S.W.3d 231, 233 (Mo. banc 2009).

Here, the circuit court did not plainly err because Instruction No. 5 is an accurate statement of the law, containing each element required to convict a defendant of first-degree murder. Appellant was charged with first-degree murder under RSMo § 565.020.[3] A person commits first-degree murder by "knowingly caus[ing] the death of another person after deliberation upon the matter." Section 565.020.1. "The crime of first-degree murder consists of three elements: (1) knowingly (2) causing the death of another person (3) after deliberation upon the matter." *Id.* (quoting *State v. Tisius*, 92 S.W.3d 751, 764 (Mo. banc 2002)).

Jury Instruction No. 5 reads in full:

> As to Count I, if you find and believe from the evidence beyond a reasonable doubt:
> First, that on or about April 6, 2018, in the State of Missouri, the defendant caused the death of [the decedent] by shooting him, and
> Second, that defendant was aware that his conduct was practically certain to cause the death of [decedent], and
> Third, that defendant did so after deliberation, which means cool reflection upon the matter for any length of time no matter how brief,
> then you will find the defendant guilty under Count I of murder in the first degree.
> However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of murder in the first degree under this instruction.

As such, the court did not err in providing Jury Instruction No. 5 to the jury because the instruction contained each element of first-degree murder required by statute and case law. "To the extent that the MAI-CR and its notes on use conflict with [the] substantive law, they are not binding." *State v. Celis-Garcia*, 344 S.W.3d at 158 (citing *State v. Carson*, 941 S.W.2d 518, 520 (Mo. banc 1997)

---

[3] All statutory references are to RSMo 2018 unless otherwise indicated.

(finding that "[p]rocedural rules adopted by MAI cannot change the substantive law and must therefore be interpreted in the light of existing statutory and case law.") (internal citation omitted)). Thus, while MAI-CR 4th 414.02 includes a fourth element purportedly requiring the jury to find that the defendant was at least 18 years old at the time of the offense, the State was only required to prove the statutory elements of first-degree murder to sustain a conviction. *See State v. Jackson-Bey*, No. SC 100188, 2024 WL 1904587 (Mo. banc April 30, 2024). Although age plays a role during sentencing, the jury was not required to make a finding as to Appellant's age to convict him. *Cf. State ex rel. Carr v. Wallace*, 527 S.W.3d 55, 61-62 (Mo. banc 2017) (finding that juvenile's *sentencing* violated the Eighth Amendment because it was imposed without consideration of his age) (citing *Miller v. Alabama*, 567 U.S. 460, 479 (2012) and *State v. Hart*, 404 S.W.3d 232, 238 (Mo. banc 2013)).

Because the jury instructions contained each element required for a conviction of first-degree murder, Appellant's claim of error resulted in neither manifest injustice nor a miscarriage of justice.

Point I is denied.

## Point II

In his second point, Appellant alleges that the circuit court violated his right to a speedy trial by not *sua sponte* dismissing the charges against him, and he requests dismissal. Appellant concedes failing to preserve this issue for review and instead requests plain error review.

This Court has recognized that "[o]rderly expedition of a case, not mere speed, is the essential requirement behind a speedy trial." *State v. Oliver*, 655 S.W.3d 407, 416 (Mo. App. E.D. 2022) (quoting *State v. Jones*, 530 S.W.3d 525, 533 (Mo. App. E.D. 2017)). To determine whether a defendant's constitutional right to a speedy trial has been violated, we must balance four factors:

6

"(1) the length of delay; (2) the reason for the delay; (3) the defendant's assertion of [their] right; and (4) prejudice to the defendant." *State ex rel. McKee v. Riley*, 240 S.W.3d 720, 729 (Mo. banc 2007) (citing *Barker v. Wingo*, 407 U.S. 514, 533 (1972)).

*Length of Delay*

The first factor, the length of the delay, is a "triggering" factor. *State v. Howell*, 628 S.W.3d 750, 758 (Mo. App. E.D. 2021) (citing *State v. Sisco*, 458 S.W.3d 304, 313 (Mo. banc 2015)). "[U]ntil there is a delay that is presumptively prejudicial, there is no need to inquire into the other factors." *Id.* (citing *Sisco*, 458 S.W.3d at 313). "In Missouri, a delay of more than eight months is generally considered presumptively prejudicial." *Id.* The delay is measured from the time of formal indictment or arrest until the trial begins. *Id.* We subtract delays attributable to the defendant from the total delay before considering this factor. *Id.* Delays counted against the defendant include delays "attributable to the defendant's continuances, motions, or other actions[.]" *Id.* (quoting *State v. Allen*, 954 S.W.2d 414, 417 (Mo. App. E.D. 1997)).

The record on appeal demonstrates that Appellant was arrested on October 24, 2018. Appellant's trial began on May 23, 2022. Overall, it took just over three and a half years for Appellant to be brought to trial. We subtract any delays attributable to Appellant. Appellant concedes causing 390 days of delay. Subtracting the 390 days of delay attributable to Appellant from the three and a half years in between Appellant's arrest and the beginning of the trial, we are left with about 30 months of delay. Because the 30 months of delay here exceeds the eight months of delay minimally necessary to trigger the presumptively prejudicial mechanism, we proceed to the second factor of the *Barker* analysis: the reason for the delay. *See Sisco*, 458 S.W.3d at 313 (citing *Riley*, 240 S.W.3d at 729).

In balancing the reasons for a delay, the Supreme Court has provided guidance:

> A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.

*Sisco*, 458 S.W.3d at 313-14 (quoting *Barker*, 407 U.S. at 531). "[D]elays attributable to the defendant weigh heavily against the defendant." *Sisco*, 458 S.W.3d at 314 (quoting *State v. Greenlee*, 327 S.W.3d 602, 612 (Mo. App. E.D. 2010)). Delays caused by the COVID-19 pandemic are justifiable, attributable to neither party. *Oliver*, 655 S.W.3d at 418; *see also United States v. Pair*, 522 F.Supp.3d 185, 194-95 (E.D. Va. 2021) (collecting cases).

*Reasons for Delay*

Turning to the specific reasons for the delays in the case at bar, we note that Appellant was arrested on or about October 24, 2018. The court originally continued the case to November 29, 2018, to allow Appellant time to retain private counsel. This delay of approximately 36 days is attributable to Appellant and weighs heavily against him. *Oliver*, 655 S.W.3d at 418. On November 29, the circuit court granted the State's motion for continuance until January 23, 2019, to allow additional time for the matter to be presented to the grand jury. While this 55-day delay is attributable to the State, it does not weigh heavily against the State because delays for grand jury proceedings are matters within the regular functioning of the courts; this continuance was not a deliberate attempt to delay the trial. *See id.* The indictment was issued on January 22, 2019. On that same day, the court entered an order continuing the case at the State's request and over Appellant's objection. The order stated: "Cause shall be heard by the Grand Jury on 1/28."[4] In the absence of pleadings or evidence suggesting otherwise, we will lightly weigh this five-day delay

---

[4] It is not clear why the court entered a continuance for the grand jury to hear the case when a grand jury had already issued an indictment on the matter.

8

against the State as a regular functioning of the courts. After Appellant waived formal arraignment and entered his plea of not guilty, the court set the case for trial beginning on March 11, 2019. The court subsequently continued the trial to April 29, 2019, because the case was first appearing before the assigned division. This 96-day delay from January 23 to April 29, while attributable to the State, weighs only lightly against the State because it is a regular functioning of the courts and not a deliberate attempt to delay the trial. *Oliver*, 655 S.W.3d at 418.

Next, on April 10, 2019, the court granted the State's motion to continue the trial setting to July 1, 2019, because the prosecutor needed additional time to prepare for trial. Then, on June 19, the court approved the State's motion to continue the trial setting to August 12, 2019, because the prosecutor was unavailable due to a vacation. This 105-day delay weighs lightly against the State, as it is attributable to a neutral reason and is not a deliberate attempt to delay trial or hamper the defense. *See Barker*, 407 U.S. at 531; *see also State v. Wright*, 551 S.W.3d 608 (Mo. App. E.D. 2018). Likewise, on July 31, the court granted a joint continuance until October 7, 2019, because discovery was incomplete and because Appellant's counsel was pre-assigned elsewhere. This 56-day delay between August 12 and October 7 is attributable to both parties, and its effect is neutral to the analysis. *Oliver*, 655 S.W.3d at 419.

On September 27, the case was transferred to a different division and assigned to a new judge, cancelling the October 7 trial setting. Subsequently, on October 2, the court set the case for trial on February 3, 2020. Then, on January 31, 2020, the court reset the case for trial on March 23. Because this collective 168-day delay is attributable to the regular functioning of the courts, it weighs lightly against the State. *Oliver*, 655 S.W.3d at 418.

Finally, on March 16, 2020, the court entered an order stating: "Given the closing of the courthouse to jurors, this cause cannot be tried on March 23, 2020. Cause set for status on April 9,

9

2020." The status hearing was subsequently continued from April 9 to April 24 at the request of the court. Then, on April 24, the court issued an order continuing Appellant's case to May 28, 2020, again due to the COVID pandemic. On May 28, the court continued the case to June 11 for a status conference, again citing COVID. On June 1, the court continued the case from June 11 to June 16. On June 16, the court set the cause for another status conference on July 9, whereat the court set the case for jury trial on December 14, 2020.

On October 13, 2020, Appellant filed a *pro se* motion for a speedy trial. On December 16, 2020, the court entered an order continuing the trial because of the COVID pandemic:

> Comes now the Court and notes that due to the ongoing worldwide health crisis and the surging COVID-19 conditions currently in the City of St. Louis, the Presiding Judge of the 22nd Judicial Circuit has suspended all jury trials for the duration of 2020. Therefore, it is not possible to have this trial on the originally scheduled date of December 14, 2020. Over defendant's objection the Court hereby makes a finding that, since trial at this time is an impossibility, the defendant's speedy trial rights shall be tolled until such time as the Court and the parties can reset this case for trial.

The court consequently continued the trial to April 12, 2021, and set the case for a status hearing on February 11, 2021.

On July 30, 2021, by consent of both parties, the case was set for a jury trial on February 22, 2022. The delay caused by the COVID pandemic—here, 501 days from March 16, 2020, to July 30, 2021—is attributable to a nationwide health emergency outside of the State's control and is neutral in its effect to the analysis. *See id.* at 419.

On January 25, 2022, Appellant filed a motion for substitution of counsel. Then, on February 22, Appellant requested that the court toll his speedy trial request to allow his counsel time to prepare for trial. The court consequently, and finally, reset the case for a jury trial on May 23, 2022. This delay is attributable to Appellant and weighs heavily against him. *Id.* at 418.

10

In sum, 429 days of delay weigh lightly against the State, 126 days of delay weigh heavily against Appellant,[5] and 557 days of delay are neutral, attributable to neither party. Because the delay attributable to Appellant weighs heavily against him, and the delay attributable to the State—while longer than that attributable to Appellant—weighs only lightly against the State, this factor lightly favors the State. *See id.* at 420.

*Appellant's Assertion of His Right*

"There is no rigid requirement regarding when a defendant must assert his right to a speedy trial." *Sisco*, 458 S.W.3d at 316 (citing *Barker*, 407 U.S. at 527-28). In evaluating a defendant's assertion, courts weigh the timeliness of the assertion and the frequency and force of the defendant's objections. *Id*. This Court has recognized that a defendant's delay in filing a request for a speedy trial can weigh against them. *Jones*, 530 S.W.3d at 533 (citing *State v. Newman*, 256 S.W.3d 210, 216 (Mo. App. W.D. 2008) (finding this factor weighed against the defendant when he delayed in filing his request for a speedy trial until nine months after his arrest)).

However, a defendant's waiting to assert the right will not necessarily weigh against them where the defendant's actions in the case were consistent with that assertion, such as by asserting the right several times. *See State v. Juniel*, 568 S.W.3d 504, 513 (Mo. App. W.D. 2019). For example, in *Sisco*, the Court found this factor to weigh in favor of the defendant when the defendant first asserted his right to a speedy trial 20 months after he was arrested, objected to the state's requested continuance, asserted his right to a speedy trial multiple times thereafter, and filed a motion to dismiss based on the violation of his right to a speedy trial. 458 S.W.3d at 316-17. In *Riley*, the Court found this factor to weigh in the defendant's favor when he filed his motion for a speedy trial three months following his arrest and filed repeated requests thereafter. 240 S.W.3d

---

[5] Our calculation of the days of delay caused by Appellant differs from Appellant's calculation because Appellant appears to have attributed a portion of the neutral delays to himself.

at 729. Similarly, in *State v. Fisher*, the court found that this factor weighed in favor of the defendant when the defendant filed the motion 180 days after his arraignment, objected to the state's requested continuance, and moved to dismiss the charges based on a violation of his right to a speedy trial. *State v. Fisher*, 509 S.W.3d 747, 755 (Mo. App. W.D. 2016). The court found that "[b]ased on the length of [the appellant]'s detainment (six years), his request for a speedy trial within the first year and a half constitutes a request early in the proceedings and reflects his desire for a speedy trial." *Id*.

Here, Appellant did not file his request for a speedy trial until October 13, 2020, almost two years after he was arrested, and Appellant's actions thereafter were inconsistent with his assertion. Appellant's November 23, 2021 *pro se* motion to dismiss was based on allegations of insufficient evidence, double jeopardy, and "denial to proceed with preliminary hearing," omitting reference to his previous speedy trial request. Likewise, none of the thirty-two paragraphs of Appellant's June 3, 2021 *pro se* motion for emergency release reference his speedy trial rights or request. Because Appellant waited until nearly two years after he was arrested to file his singular speedy trial demand, and because Appellant's subsequent actions were largely inconsistent with that demand, this factor weighs heavily against Appellant.

*Prejudice from Delay*

Finally, "whether delay resulted in prejudice to the defendant is the most important factor." *Howell*, 628 S.W.3d at 759 (citing *State v. Bolden*, 558 S.W.3d 513, 522 (Mo. App. E.D. 2016)). The appellant has the burden of demonstrating prejudice, and "[c]laims of prejudice must be actual or apparent on the record, or by reasonable inference, while speculative or possible prejudice is not sufficient." *Wright*, 551 S.W.3d at 620 (quoting *Greenlee*, 327 S.W.3d at 612-13 (Mo. App. E.D. 2010)) (internal quotation marks omitted). To determine whether a delay prejudiced a

defendant, courts evaluate three concerns: "(1) prevention of oppressive pretrial incarceration; (2) minimization of anxiety and concern of the accused; and (3) limitation of the possibility that the defense will be impaired." *Sisco*, 458 S.W.3d at 317 (quoting *State ex rel. Garcia v. Goldman*, 316 S.W.3d 907, 912 (Mo. banc 2010)). Courts view the impairment of the defense as the most serious. *Id*. When reviewing for plain error, an appellant's assertion of prejudice must rise to the level of manifest injustice. *Jones*, 530 S.W.3d at 534 (citing *State v. Goode*, 721 S.W.2d 766, 770 (Mo. App. E.D. 1986)).

Here, Appellant asserts that he suffered manifest injustice because he was incarcerated while awaiting trial. While a general claim of prejudice based on the length of pretrial incarceration can establish minimal prejudice, *State v. Smith*, 491 S.W.3d 286, 308 (Mo. App. E.D. 2016), Appellant "does not detail, nor does the record reveal, any specific instances of the oppressive nature of his pretrial incarceration." *Wright*, 551 S.W.3d at 620. Given the serious charges and the evidence presented against Appellant, Appellant has not alleged facts establishing that his pretrial confinement was overly excessive. *See id.* "[A]nxiety alone does not establish prejudice absent the showing of specific instances that weighed heavily on the defendant." *Coleman v. State*, 640 S.W.3d 159, 166 (Mo. App. E.D. 2022); *see also Howell*, 628 S.W.3d at 760 (finding that an appellant's assertion that he suffered particularly heavy anxiety due to his grandfather's death and jail staff's mistake in not allowing him to attend the funeral was "not particularly heavy or more than the usual anxiety and concern felt by all incarcerated persons separated from their families"). Likewise, incarceration in close quarters during the COVID-19 pandemic is not particularized to Appellant and does not rise to the level of prejudice. *Oliver*, 655 S.W.3d at 421.

Finally, turning to the most serious consideration of prejudice, *Wright*, 551 S.W.3d at 620, Appellant has not alleged that his defense was impaired by the delay. Because the record "strongly

13

suggests that the pretrial delay did not hinder [Appellant's] defense or cause him actual prejudice, this factor weighs heavily in favor of the State." *Id.* at 621.

*Weighing the Four Barker Factors*

Three of the four *Barker* factors weigh against Appellant, including the most important factor: prejudice. The one factor in Appellant's favor is the length of the delay. Although the length of Appellant's delay is presumptively prejudicial, this presumption is overcome by the fact that the delays are largely either attributable to Appellant or circumstances that weigh neutrally or only lightly against the State. Furthermore, Appellant's assertion of his right was belated and solitary, and he was not prejudiced by the delay. Because the *Barker* factors weigh against Appellant, the court did not err in failing to *sua sponte* dismiss the charges for a speedy trial violation, and thus Appellant's claimed error resulted in neither manifest injustice nor miscarriage of justice.

For these reasons, Point II is denied.

## **Point III**

In his third point on appeal, Appellant requests a new trial, alleging that the circuit court erred in sentencing him to life imprisonment without the possibility of parole because the State did not establish beyond a reasonable doubt that he was 18 years old or older at the time of the crime. Because Appellant has failed to demonstrate that his claim of error facially establishes substantial grounds for believing that manifest injustice or miscarriage of justice resulted, we decline to proceed to step two of plain error review. *See Brandolese*, 601 S.W.3d at 526.

Appellant did not raise any issue regarding sentencing in his motion for a new trial or at the sentencing hearing, or at any other time prior to his appeal; this issue is therefore unpreserved, and we may only review for plain error. *State v. Pierce*, 548 S.W.3d 900, 904 (Mo. banc 2018) (claim of sentencing error could be reviewed only for plain error when the defendant failed to

14

object at the sentencing hearing). Discretionary plain error review under Rule 30.20 directs this Court to first determine whether the claim of error facially establishes substantial grounds for believing that manifest injustice or miscarriage of justice has resulted. *Brandolese*, 601 S.W.3d at 526. In the absence of such a determination, an appellate court should decline to review for plain error. *Id.*

Here, Appellant was on notice that he would be charged and sentenced as an adult because the indictment listed his date of birth as August 25, 1989. Because Appellant has never alleged that he is under the age of 18, Appellant has failed to demonstrate that his claimed error facially establishes substantial grounds for believing that manifest injustice or miscarriage of justice resulted, and we thus decline to proceed to step two of plain error review. *Id.*

Point III is denied.

### Conclusion

For the reasons set forth above, the judgment of the circuit court is affirmed.


_____
Renée D. Hardin-Tammons, J.


Kurt S. Odenwald, P.J., and
Michael E. Gardner, J., concur.


15